P. GARVAN, Inc., v. EATON, Collector of Internal Revenue.

District Court, D. Connecticut. June 2, 1927.

No. 2987.

Internal revenue ⊗⟹7(17), 9(27)—Notes of stockholders for money withdrawn from corporation held not "invested capital" of corporation (Revenue Act 1917, § 207 [Comp. St. § 6336⅜h]; Revenue Act 1918, § 326 [a], being Comp. St. § 6336⅞i).

The stock of a corporation was owned by two persons in equal shares. During each of five years the stockholders withdrew large sums from the corporation, for which they substituted their notes without interest, on which no payments were made. Held, that such notes were not "invested capital" of the corporation, within Revenue 1917, § 207 (Comp. St. § 6336⅜h), or Revenue Act 1918, § 326 (a), being Comp. St. § 6336⅞i upon which deductions might be based, but that the withdrawals were in reality distribution to the stockholders of surplus.

[Ed. Note.—For other Definitions, see Words and Phrases, First and Second Series, Capital Invested.]

At Law. Action by P. Garvan, Inc., against Robert O. Eaton, Collection of Internal Revenue. Judgment for defendant.

J. Gilbert Calhoun, of Hartford, Conn., and E. St. Clair Thompson, of New York City, for plaintiff.

John Buckley, U. S. Atty. and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and John R. Wheeler, Sp. Counsel Bureau of Internal Revenue, of Washington, D. C., for defendant.

THOMAS, District Judge. This is an action at law to recover income and excess profits taxes in the amount of $68,634.16 for the fiscal years ending November 30, 1917, 1918, 1919, and 1920, which are alleged to have been erroneously assessed and collected under the provisions of the Revenue Acts of 1917 (40 Stat. 300) and 1918 (40 Stat. 1057). By stipulation on file, trial before a jury was waived.

The plaintiff is a Connecticut corporation, organized in 1905 and engaged in dealing in paper stock and as jobbers of paper. During the years in question, the authorized and issued capital stock of the corporation consisted of 1,500 shares, of the total value of $150,000, of which all except 4 shares were equally divided between the two brothers, John S. and Thomas F. Garvan. Each of them received a substantial salary. During the years 1916 and 1917 their salaries were $20,000 each. In 1918 each received $30,000 and in 1919 and 1920 $50,000. In addition to their salaries, each was allowed $10,000 a year for expenses. At the end of each year a 7 per cent. dividend was declared.

In addition to their salaries, expenses, and dividends on their stock, each one withdrew various amounts from the corporation during the years in question. If the sums to which each of the Garvans was entitled as salary, expenses, and dividends happened to be less than the amount actually withdrawn by them, they would each execute, at the end of the year, a demand note, bearing no interest, which note represented the excess so withdrawn. The dates and amounts of the notes executed by each of the Garvans follow:

| | | |
|---|---|---:|
| 1916 | Thomas F. Garvan | None |
| | John S. Garvan | $ 21,467.10 |
| 1917 | Thomas F. Garvan | 106,531.58 |
| | John S. Garvan | 88,379.01 |
| 1918 | Thomas F. Garvan | 70,424.05 |
| | John S. Garvan | 65,130.18 |
| 1919 | Thomas F. Garvan | 31,049.08 |
| | John S. Garvan | 68,577.63 |
| 1920 | Thomas F. Garvan | 103,376.28 |
| | John S. Garvan | 95,214.28 |

In the returns filed by the corporation for the above-enumerated years, the notes were included as invested capital. At the close of the fiscal year of 1920, the notes aggregated the sum of $650,149.19. The Commissioner of Internal Revenue disallowed these notes as invested capital. No payments have ever been made on any of the notes by either one of the brothers. A tax having thereupon been assessed, and paid under protest, this suit is brought to recover the amount so paid.

The plaintiff invokes the provisions of the Revenue Acts of 1917 and of 1918, which provide for a deduction from the income and excess profits tax of a percentage of the invested capital. The germane text is as follows:

Section 207 of the Revenue Act of 1917 (Comp. St. § 6336⅜h) provides:

"That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title nor money or other property borrowed, and means, subject to the above limitations:

"(a) In the case of a corporation or partnership: (1) Actual cash paid in; (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor); and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. * * *"

Section 325 (a) of the Revenue Act of 1918 (Comp. St. § 6336⅞h) provides:

"The term 'tangible property' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property. * * *"

Section 326 (a) of the Revenue Act of 1918 (Comp. St. § 6336⅞i) reads as follows:

"(a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions [b] and [c] of this section):

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in

excess of such par value, in which case such excess shall be treated as paid-in surplus; * * *

"(3) Paid-in or earned, surplus and undivided profits; not including surplus and undivided profits earned during the year."

The moneys which were so withdrawn by the Garvans, and which were represented by the demand notes above enumerated, were not moneys which were used by them in the prosecution of the corporate business. They were moneys which went into the pockets of the Garvans for their own personal use, uses which had no connection of any kind with the corporate affairs.

In spite of this, however, the secretary of the corporation testified that:

"Subsequent to 1916 was the war period, and the fluctuation in the market values of material in which P. Garvan dealt was so great that, in order to conserve all the assets of the corporation, it was deemed inadvisable to pay any dividends and to build up a surplus, due to the fact that the prices and commodities were changing so rapidly they didn't know just how much capital they would need to carry on the business.

"Q. And for that reason they didn't undertake to distribute all their assets as they had done in prior years? A. That was the reason."

I find that this testimony is disingenuous. The plain fact is that reserves of surplus are not built up by the process of extracting the funds from the corporation. To physically pay out corporate funds, and to substitute therefor noninterest-bearing promissory notes, upon which, for a period of years not a single payment has been made, is indeed a curious method of building up a reserve.

It will serve no useful purpose to discuss the question as to whether the amounts withdrawn by the Garvan brothers ever constituted cash paid in, or paid-in surplus. The gist of the problem consists in the determination of the status of these amounts after they were corporeally segregated from the rest of the corporate property. The contention of the plaintiff is that these notes are corporate assets, and that because they are corporate assets they constitute "invested" capital within the meaning of the Revenue Acts. With this suggestion I find myself unable to agree.

The practicalities of the situation at bar indicate the existence of a copartnership in the guise of a corporation, a copartnership composed of two individuals having equal interests. That these gentlemen could in fact withdraw the corporate funds and still continue the status of these funds as invested capital seems to me to be clearly inconsistent.

The notes, which were substituted for the funds which were withdrawn, I find to be pro forma obligations only. The fact that 10 years have elapsed in the first instance and 6 years in the last instance, and that not a dollar has been paid to the corporation on account of the notes, when viewed in connection with the personnel and organization of the corporation, is quite conclusively indicative of their real nature. It serves not to say that they have been carried as assets on the corporate books of account, and that corporate credit statements have been rendered in which they are so declared. If corporate creditors have been led to believe that these notes are active assets, it does not follow that a court must trail along with them.

The spirit of the Revenue Act is replete with the idea that invested capital is capital employed in the corporate business. It is true that a promissory note may be regarded as invested capital, but it will be found that, wherever it has been so regarded, it constituted a current exigent obligation, and represented an actual undertaking to pay for corporate stock, or that it was discountable paper given in regular course in payment of corporate property. The notes in question belong to neither class. I find them to be nothing but a transparent device for distributing surplus funds without appearing to do so.

Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, is cited by the plaintiff in support of its case. A careful reading of that case will serve to enforce the lesson that the terminology of accounting practice will not be permitted to obfuscate the interpretation of the revenue statutes. That case presented a situation practically the reverse of the one at bar. There, instead of pro forma obligations, there were pro forma divisions of surplus. The divisions never had an actual existence. They could not have had an actual existence without destruction of the corporate business. In that case, the surplus was represented by plant, fixtures, and stock in trade, all of which continued to be used in the corporate business, in spite of a verbal distribution thereof to stockholders. There having been no real distribution, there having been no real separation of this surplus from the corporate property, that surplus continued to remain invested capital.

In the case at bar, I find a real distribution of the surplus, without the formality

of a declaration of dividends. Judgment may therefore be entered for the defendant, with costs to abide the event. Counsel may submit findings in accordance with this opinion.