**800**

## H. H. HORNFECK & SON, Inc., v. ANDERSON, Collector of Internal Revenue.

District Court, S. D. New York.   July 24, 1929.

Robert H. Koehler, of New York City, for plaintiff.

Charles H. Tuttle, U. S. Atty., and J. Meirowitz, Asst. U. S. Atty., both of New York City, for defendant.

GODDARD, District Judge.   This action was brought by the plaintiff to recover $5,845.36 which was paid by the plaintiff to the Commissioner of Internal Revenue on June 12, 1926, under protest, which sum includes a tax of $5,758.98 assessed against the defendant for the plaintiff's fiscal years ending January 1, 1919, and January 1, 1920, with interest thereon.   Upon stipulation of the parties, the case has been tried by a jury of one, and each party has moved for a direction of a verdict in its favor.

The Commissioner disallowed $41,296.57, which the plaintiff claimed was invested capital, and which the Commissioner ruled was borrowed capital, and the question is whether it is invested capital, or borrowed capital.

The plaintiff is a New York corporation, which A. C. Hornfeck and M. R. Hornfeck caused to be organized in May, 1916, for the purpose of taking over the wholesale and retail fur business, which had been conducted for a number of years by the said Hornfecks as copartners.   Upon being organized, the gross assets of the copartnership, including fixtures, merchandise, accounts, cash in the bank (less $10,000 cash reserved to the copartners), which amounted to $176,771.49, inclusive of good will, valued at $20,000, but subject to the liabilities of the copartnership, amounting to $65,774.92, and thus having a net value of $131,296.57, were conveyed by the Hornfecks to the corporation, and the Hornfecks agreed "to accept in payment of the foregoing property the aforesaid sum of $131,296.57, of which Anna C. Hornfeck shall receive the sum of $72,919.58, and Maximilian R. Hornfeck the sum of $58,376.99, to be placed to our credits and payable on demand, but which indebtedness of the said copartnership for goods, wares, and merchandise purchased or moneys borrowed up to this date, and expressly subject to all present and future indebtedness of the corporation for goods, wares, and merchandise purchased, or for moneys borrowed or which may be hereafter borrowed, and which may now be due or hereinafter become due, so that at all times the said creditors of said copartnership or of this corporation for merchandise purchased or for moneys borrowed shall have a lien and claim upon the assets of the corporation prior to the aforesaid indebtedness to said Anna C. Hornfeck and Maximilian R. Hornfeck."

At the time of the organization of the corporation, the former copartners paid $10,000 in cash to the corporation and received therefor a corresponding amount of the corporation's stock.   The said A. C. Hornfeck and M. R. Hornfeck were and continued to be the only stockholders of the corporation.

On April 1, 1916, by agreement between the Hornfecks and the corporation, there was issued to them $90,000 additional stock, and paid for by charging that amount against the aforesaid book indebtedness.   It appears from affidavits that the accounts with the Hornfecks were carried upon the books of the corporation as "capital accounts," and so regarded between the parties themselves.

Between May, 1916, and January 31, 1919, $32,350.97 had been credited to the individual accounts of the said Hornfecks as accrued officers' salaries; that amount, however, is not claimed by the taxpayer as invested capital.   The $41,296.57, which the plaintiff claims it is entitled to treat as invested capital, is the $131,296.57 referred to above as the net assets, less the $90,000 charged to their account against the stock issued to them; the plaintiff contending that this $41,296.57 was "paid-in or earned surplus," and entitled to be included as invested

capital. The defendant, on the other hand, contends that it is not paid-in or earned surplus, within the meaning of section 326(a) of the Revenue Act of 1918 (40 Stat. 1057), but was borrowed capital, as defined in section 326(b) of that act. No interest or dividends were credited to the Hornfecks on this $41,296.57.

The pertinent parts of section 325 read as follows:

"Section 325(a) That as used in this title—

"The term 'intangible property' means patents, * * * good will, * * * and other like property.

"The term 'tangible property' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, * * * and other property other than intangible property.

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise."

Section 326(a) and (b) states that invested capital is

"(1) Actual cash bona fide paid in for stock or shares.

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus. * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year."

(4) and (5) Intangible property bona fide paid in for stock or shares, provided that in no case shall the total amount exceed in the aggregate 25 per cent. of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year.

"(b) As used in this title the term 'invested capital' does not include borrowed capital."

I am constrained to differ from the Board of Tax Appeals, and to regard the amount in question, namely, $41,296.57, as a corporate surplus. The Board of Tax Appeals based their decision largely upon the assumption that this sum was "payable on demand" by the corporation to the Hornfecks, which is not the fact. It is true that, in the agreements between the Hornfecks and the plaintiff, it is stated that the money is payable on demand; but it is expressly agreed that the assets, which the Hornfecks conveyed to the corporation, were subject to all present and future indebtedness of the corporation's creditors, and therefore could not be delivered to the Hornfecks until the dissolution of the corporation, and then only so much of it as remained after all of the corporation's liabilities had been liquidated. This money was intended to be and actually was used by the corporation for the purchase of machinery and merchandise and was necessary for the carrying on of its business.

The following statement of Judge Rogers in Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, at page 58, is quite appropriate: "We may repeat what we said in Douglas v. Edwards (C. C. A.) 298 F. 229, 234, that it is well 'to realize that, in this case, the rights of the parties can neither be established nor impaired by the bookkeeping methods employed, or by the names given to the various items.'"

Regarding, not the form, but the actual situation, the position of the Hornfecks in relation to this $41,296.57 was similar to that of a stockholder with an interest in a corporate surplus. And it seems to me that this "paid-in surplus" was "invested capital," as defined in section 326(a), subd. (3). They did not have possession of the funds; neither did they receive dividends or interest upon it; they were only entitled to it if and when the corporation ceased to do business and dissolved. It was to all intents and practical purposes a corporation fund.

What was done in the way of issuing to the Hornfecks the $90,000 of stock and the canceling by the corporation of the $90,000 obligation to the Hornfecks, does not, as I see it, affect this remaining $41,296.57. Perhaps that does not affect the situation at all, unless dividends be paid on that stock, in which event the creditors of the corporation might have reason to complain; but that question is not before this court.

In La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 530, 65 L. Ed. 998, it was stated: "The provision of clause (3) that includes 'paid in or earned surplus and undivided profits used or employed in the business' recognizes that in some cases contributions are received from stockholders in money or its equivalent for the specific purpose of creating an actual excess capital over and above the par value of the stock. * * *"

It seems to me that the case of Eaton v. English & Mersick Co., supra, is in point. In that case, by resolution of the directors, the net profits of the business were, for several years, credited to the "accounts" of the stockholders, substantially proportionate to the amount of their holdings, and there was debited from month to month the amounts paid by the corporation to the stockholders. The salary of each officer was also credited to the same account, although the item of salary was excluded from the fund treated as invested capital. These funds were used by the English & Mersick Co., manufacturers, in their business. The court held that it was to be regarded as "invested capital." Judge Rogers stated:

"An indebtedness is an obligation payable on some date, or on some condition, or on demand. These resolutions fixed no time of payment, and the surplus was capitalized in machinery, raw materials, goods finished, goods in process, etc. In other words, the surplus became invested capital. The surplus became incapable of distribution or division if the corporation was to continue to function."

The case of Baker & Taylor Co. v. United States (C. C. A.) 26 F.(2d) 187, cited by counsel for the government, seems to me not to be in point, for in that case the decision turned on the inability of the taxpayer to establish the value of the intangible good will, which was not paid for in cash or tangible property, or in the stock of the corporation, so as to bring it within the requirements of the statute for invested capital.

Accordingly, the jury is instructed to find a verdict in favor of the plaintiff in the sum of $5,845.36, with interest from June 12, 1926.