**EATON, Collector of Internal Revenue, v. ENGLISH & MERSICK CO.**

(Circuit Court of Appeals, Second Circuit. April 13, 1925.)

No. 288.

**1. Statutes ⬤═245—Tax statutes construed in favor of taxpayer in case of doubt.**

Tax statutes will not be extended by implication beyond clear import of language used, and any doubt will be resolved in favor of the taxpayer and against the government.

**2. Internal revenue ⬤═7—Resolution providing for division of net profits to be credited to stockholders' individual surplus accounts held not declaration of "dividends."**

Resolution providing that net profits for preceding year be divided among stockholders, and proportionate amounts credited to their individual surplus accounts, held not to constitute a "dividend" within meaning of Revenue Act, §§ 201a, 300 (Comp. St. Ann. Supp. 1919, §§ 6336⅛b, 6336⅞₆a), in absence of provision for payment at any particular time by setting aside a sum therefor; there being no intent to declare dividend as shown by failure to comply with Gen. St. Conn. 1918, § 3423.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dividend.]

**3. Evidence ⬤═65—Corporate directors presumed to know law of state in which corporation organized.**

Corporate directors presumed to know law of state which gave them corporate existence and governed their action.

**4. Internal revenue ⬤═7—Net profits for surplus, retained in treasury and used in business, held "invested capital" and not "borrowed capital."**

The net profits or surplus of corporation, retained in treasury and used in business for purchase of machinery and materials, though divided each year and credited to individual surplus accounts of stockholders pro rata, but not distributed, held "invested capital" within Revenue Act, § 326 (Comp. St. Ann. Supp. 1919, § 6336⅞₆i), and not "borrowed capital."

In Error to the District Court of the United States for the District of Connecticut.

Action by the English & Mersick Company against Robert O. Eaton, Collector of Internal Revenue for the District of Connecticut. Judgment for plaintiff (299 F. 646), and defendant brings error. Affirmed.

This case comes here on writ of error to the United States District Court for the District of Connecticut.

The plaintiff in error was defendant below, and is hereinafter referred to as defendant. The defendant in error was plaintiff below, and is hereinafter referred to as plaintiff.

The plaintiff is a corporation organized under the laws of the state of Connecticut and has its principal office, for the transaction of its business, in the city of New Haven in that state. The defendant is the collector of internal revenue of the United States for the district of Connecticut.

The plaintiff is engaged in the manufacture and sale of automobile and carriage hardware, although in the year 1918 its facilities, capital, and surplus were practically exclusively devoted to the manufacture of motor truck and aeroplane radiators for the United States.

The plaintiff duly filed its return for income and profits taxes for the year 1918. It alleged that its net income for that year was $47,238.21 and it paid in that year for income and profits taxes the sum of $6,251.-78, believing at the time that amount to be the correct amount of the tax due. It admitted in its petition that, owing to various corrections made to its return, the correct

amount of tax due, as nearly as the plaintiff could ascertain, was $7,706.99.

The Commissioner of Internal Revenue, on February 12, 1921, notified the plaintiff that an additional tax for the year 1918 as income and profits taxes, would be assessed in the sum of $17,254.40. Thereafter a hearing was had before the Income Tax Unit of the Treasury Department, and the plaintiff prosecuted an appeal before the Committee on Appeals and Review, and on or about July 20, 1921, after notice that the additional tax had been assessed, it filed with the department a claim for its abatement. Thereafter the Commissioner of Internal Revenue disallowed the appeal and denied the claim for abatement.

Thereafter defendant, as collector of internal revenue, demanded payment of the assessment with interest, the whole amounting to $18,203.39, and threatened to enforce payment by distraint and sale of plaintiff's property. Thereupon the plaintiff paid, under protest, the amount demanded, and stated that it paid under duress and compulsion.

Thereafter, and on August 11, 1922, the plaintiff appealed to the Commissioner of Internal Revenue and demanded repayment of the tax. The Commissioner, having made no decision thereon within the six-month period, as provided for in the Revenue Act, the plaintiff instituted this suit at common law to recover from the collector the sum of $18,203.39 so paid by it, with interest thereon from July 20, 1922.

The case was heard in the District Court, and a written stipulation of the attorneys on both sides was entered on the records that the case might be submitted to the court without the intervention of a jury.

Judgment was entered for the plaintiff in the sum of $16,608.92, with interest at 6 per cent. per annum from July 20, 1922, with costs to abide the event. It was entered, together with a certificate of probable cause, under the provision of section 989 of the Revised Statutes (Comp. St. § 1635).

John Buckley, U. S. Atty., and Allan K. Smith, Sp. Asst. U. S. Atty., both of Hartford, Conn., Nelson T. Hartson, Solicitor, of Internal Revenue, and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for plaintiff in error.

Henry F. Parmelee, of New Haven, Conn., for defendant in error.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action was tried on an agreed statement of facts supplemented by the testimony of two witnesses who between them held the whole of the stock of the plaintiff corporation, with the exception of a qualifying share held by a third person. These two witnesses were called on behalf of the plaintiff, and their testimony is uncontradicted. No witnesses were called by the defendant. There is no dispute as to the facts.

The plaintiff is engaged in manufacturing carriage hardware and supplies. The business was carried on for many years under a partnership, but in 1895 it was converted into a corporation with a capital of $20,000. In its income tax return for the year of 1918, as corrected, it claimed an invested capital of $438,504.72. It appears that beyond the initial $20,000 represented by the capital stock, no further capital was put into the business except out of the earnings of the company. The Commissioner of Internal Revenue, upon auditing the return, disallowed the sum of $391,892.13 as part of the plaintiff's invested capital, and, redetermining the taxes, assessed against the plaintiff the additional sum of $17,254.40. It was the payment, under protest, of this sum with interest, the whole amounting to $18,203.39, which has occasioned this action. The question to be determined therefore is as to what is the plaintiff's invested capital. It is undisputed that the plaintiff's net income from its regular business in 1917 was in excess of $200,000. And it is stipulated in the agreed statement of facts that, if the plaintiff is entitled to its surplus as invested capital, it is entitled to judgment for the recovery of an overpayment of $15,659.93, with interest thereon, paid to the collector, or a total of $16,608.92, with interest thereon from July 20, 1922, until the date of judgment.

Its original capital stock of $20,000 remained such until the end of 1918, when a part of the surplus in controversy was capitalized by the issue of new stock, and again in 1921, when new stock was issued against surplus, so that its present capitalization is $407,400. Prior to the year 1918 earnings of the business had been accumulated amounting to $391,892.13. This accumulated surplus the court below has found was invested in machinery, material in process, manufactured stock on hand, in accounts due from customers, and in cash, all of which was essential to the operation of the business. The

court also found that no physical division of the property was ever made to the several stockholders.

It appears that the plaintiff included this surplus as assets in all of its balance sheets and annual financial statements submitted at the annual stockholders' meetings, which also were filed with its bank from which it borrowed money, and which it furnished regularly to Dun and Bradstreet, and on the strength of which it received a credit rating of from $300,000 to $500,000.

Prior to the year 1917 the corporate stock was owned as follows: John B. Kennedy, 52½ per cent., Fred T. Bradley, 46½ per cent., Carl W. Johnson, 1 per cent. During the years 1917 and 1918, the latter being the year of the tax assessment under consideration, the stockholders were as follows: John B. Kennedy, 52 per cent.; Fred T. Bradley, 45 per cent.; Carl W. Johnson, 1½ per cent.; Seymour M. Bradley, 1½ per cent.

For a number of years prior to 1918 the board of directors passed in January of each year a resolution which was identical in wording except as to the designation of the year to which reference was had—as passed in 1917 for example. The vote passed in 1917 was as follows: "It was moved and voted that the net profit for the year ending December 31, 1916, be divided pro rata with the stockholders as the individual holdings appear, and credit the amount to the individual surplus accounts standing in the names of the stockholders."

In January, 1918, the resolution passed was as follows: "It was moved and voted that the net profits remaining after deducting salaries, expenses, and war excess profits taxes be divided in the following proportions, and the amounts credited to the individual surplus accounts of the stockholders: John B. Kennedy, 52 per cent.; Fred T. Bradley, 45 per cent.; Carl W. Johnson, 1½ per cent.; Seymour M. Bradley, 1½ per cent."

There was established in the books of the corporation a "Division of Surplus" account. In this account there is set up as a credit, corresponding to the name of each shareholder, a sum closely approximating the amount of surplus attributable to the number of shares of stock held by each stockholder. There is debited from month to month the amounts paid by the corporation to the several stockholders. The salary of each officer was credited in the same account. These accounts did not bear interest, and were not understood by the stockholders (except for salary items) to be an indebtedness of the corporation to them.

While the sums paid the stockholders from earnings, were not absolutely in proportion to their stockholdings from month to month, they were substantially so, and practically so averaged from year to year.

The sole issue is as to the status of the accumulated surplus of $391,892.13, which the government claims represented capital borrowed from the stockholders.

The decision of the court below is in effect that amounts credited on the books of the corporation to the accounts of stockholders, even though pursuant to resolution, nevertheless constituted invested and not borrowed capital, if such amounts were never actually distributed but were used in the business. This decision is contrary to the rulings made by the Treasury Department. See A. R. R. 102 (Cumulative Bulletin 2, p. 277), and A. R. R. 356 (Cumulative Bulletin 3, p. 330); Montgomery's Income Tax Procedure (1925), 1627.

The question involved arises under the Revenue Act of February 24, 1919 (40 St. c. 18, p. 1057). The term "invested capital" is defined in part 5, § 326, p. 1092, of the act, as follows:

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section); (1) actual cash bona fide paid in for stock or shares; (2) actual cash value of tangible property, other than cash bona fide paid in for stock or shares * * * (3) paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year. (4) * * * (5) * * *

"(b) As used in this title the term 'invested capital' does not include borrowed capital.

"(c) [Relates to deductions based on inadmissible assets and is not material to this case.]" Comp. St. Ann. Supp. 1919, § 6336⁷/₁₆i.

It will be observed that the act, section 326 (a) (3), defines "invested capital" as including "paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year."

The item of $20,000 actual cash bona fide paid in for stock, when the corporation was organized, is conceded to be included within the definition of invested capital. The dispute relates to the item of $391,892.13, which is claimed by the plaintiff and denied by the defendant to be any part of the "invested capital."

[1] Statutes imposing taxes are not extended by implication beyond the clear import of the language used. In a case of doubt, the doubt is to be resolved in favor of the taxpayer and against the government. Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Smietanka v. First Trust & Savings Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391; Shwab v. Doyle, 258 U. S. 529, 536, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; United States v. Merriam, 263 U. S. 179, 187, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Old Colony Trust Co. v. Malley (D. C.) 288 F. 903, 910; Central R. R. Co. of New Jersey v. Duffy (C. C. A.) 289 F. 358.

[2] The defendant contends that the resolution of January 18, 1918, and that of 1917, hereinbefore set forth, constituted the declaration of dividends which reduced the "invested capital" of the company by the amount thereof, and that the amounts so credited and not withdrawn by the stockholders, when used by the company, constituted "borrowed money," and therefore were excluded from "invested capital" of the company under the provision of section 326 (b). It is said that in each of the resolutions it was provided that the net profits for the preceding year should be divided among the stockholders in proportion to their stock ownership, and that the proportionate amounts should be credited to their individual surplus accounts. And, it is added that on the books of the company the separate individual account of each stockholder was credited with his proportionate share of the current net profits. This, it is insisted, was sufficient to constitute a declaration of a dividend. We do not share in that opinion. Neither of the resolutions, to which reference has been made, constituted the declaration of a dividend. The Century Dictionary stated that "To declare a dividend" is "to announce readiness to pay a specified dividend."

The usual manner of declaring a dividend is to pass a vote that a dividend of a designated amount per share, or of a designated percentage on the outstanding stock, be declared payable on a stated day to stockholders of record at the close of business on a designated day. If the directors intended to declare a dividend, they would have said so. But they did not in their vote make use of the term. And they did not state the amount or percentage to be paid, or designate the time upon which it was to become payable, or even that it was to be paid at all.

In 14 C. J. 798, the term "dividend" as applied to corporate stock is defined "as that portion of the profits and surplus funds of a corporation which has been actually set apart, by a valid act of the corporation for distribution among the stockholders according to their respective interests, in such a sense as to become segregated from the corporation, and to become the property of the stockholders distributively."

Mr. Cook in his authoritative work on Corporations (7th Ed.) vol. 2, p. 1579, § 541, states that, "when a dividend out of the earnings of a company has been regularly declared and is due, it becomes immediately the individual property of the stockholder. There is at once a severance, for the use and benefit of the members of the corporation, of so much of the accumulated earnings as are declared; and the dividend thereafter exists as a separate fund, distinct from the capital stock or surplus profits. It then becomes the absolute property of the stockholders." There is no doubt about the correctness of this statement of the law. It is abundantly sustained by the authorities, many of which are cited by the learned author.

An examination of the resolutions, upon which the government relies in this case, shows that their adoption did not work a severance of the part declared from the remainder of the accumulated earnings. It created no separate fund distinct from the capital stock or surplus profits. No fund was at any time deposited anywhere to pay the so-called "dividend." If at any time after the resolution was passed the company had failed, there was no fund "set aside" which had so become the property of the shareholders that it could not have been reached at any time by the creditors of the corporation. Moreover, at the time this so-called dividend was declared, there was no "fund" which could have been set aside, out of which it could have been paid in cash as the findings of fact made by the district judge show "that said sum of $391,892.13 was not in cash, but was invested in machinery, material in process, manufactured stock, accounts due from customers, and cash essential to the operation of the business; that no physical division or allocation of such property was ever made to the several stockholders."

It is true that a dividend need not always

be paid in cash. Dividends are also payable in stock, in bonds or scrip, or in property. But the resolutions, herein relied upon, do not upon their face indicate that they are to be paid in stock, in bonds or scrip, or in property as distinct from cash. And at the argument it was not suggested that the resolutions relied upon created other than a cash dividend. That they did not amount to a declaration of any form of dividend seems to us very clear.

The resolutions relied upon certainly did not constitute a dividend within the meaning of the Revenue Act of 1918 which expressly defined the term, and by which we must be governed in this case. The act, in title 2, § 201 (a), 40 Stat. 1059, declares "that the term 'dividend' when used in this title (except in paragraph (10) of subdivision (a) of section 234) means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, or (2) any such distribution made by a personal service corporation out of its earnings or profits accumulated since February 28, 1913, and prior to January 1, 1918." Comp. St. Ann. Supp. 1919, § 6336⅛b.

And title 3, § 300, 40 Stat. 1086, declares "that when used in this title the terms 'taxable year,' 'fiscal year,' 'personal service corporation,' 'paid or accrued,' and 'dividends' shall have the same meaning as provided for the purposes of income tax in sections 200 and 201. * * *" Comp. St. Ann. Supp. 1919, § 6336⁷/₁₆a.

No distribution of its accumulated earnings or profits to its shareholders or members was made in the year herein involved, either in cash, or in other property or in stock by this corporation. And the resolutions did not create any indebtedness. An indebtedness is an obligation payable on some date, or on some condition, or on demand. These resolutions fixed no time of payment, and the surplus was capitalized in machinery, raw materials, goods finished, goods in process, etc. In other words, the surplus became invested capital. The surplus became incapable of distribution or division if the corporation was to continue to function.

As respects these resolutions, and the bookkeeping entries, it may be said of them as the Supreme Court remarked in Eisner v. Macomber, 252 U. S. 189, 209, 40 S. Ct.

189, 194 (64 L. Ed. 521, 9 A. L. R. 1570), concerning certain entries therein:

"For bookkeeping purposes, the company acknowledges a liability in form to the stockholders equivalent to the aggregate par value of their stock, evidenced by a 'capital stock account.' If profits have been made and not divided they create additional bookkeeping liabilities under the head of 'profit and loss,' 'undivided profits,' 'surplus account,' or the like. None of these, however, gives to the stockholders as a body, much less to any one of them, either a claim against the going concern for any particular sum of money, or a right to any particular portion of the assets or any share in them unless or until the directors conclude that dividends shall be made and a part of the company's assets segregated from the common fund for the purpose. The dividend normally is payable in money, under exceptional circumstances in some other divisible property; and when so paid, then only (excluding, of course, a possible advantageous sale of his stock or winding-up of the company) does the stockholder realize a profit or gain which becomes his separate property, and thus derive income from the capital that he or his predecessor has invested."

We are not now particularly concerned about the entries which were made in the books of the company. We may repeat what we said in Douglas v. Edwards (C. C. A.) 298 F. 229, 234, that it is well "to realize that, in this case, the rights of the parties can neither be established nor impaired by the bookkeeping methods employed, or by the names given to the various items."

[3] It may be said in passing that, in adopting the resolutions, which the government insists amounted to the declaration of a dividend, the directors of the corporation do not appear to have so intended or to have so understood their action. We may assume that they knew the law of Connecticut which gave them corporate existence and governed their action. If these resolutions constituted declarations of dividends, the directors failed to comply with the law of the state, as there is no notation of the names of the directors voting in favor of the resolutions. General Statutes of Conn. 1918, § 3423. Furthermore, if the contention of the government is correct, these officers of the corporation committed, it would seem, penal offenses in furnishing financial statements carrying a corporate surplus which indicated a worth in excess

of $400,000, where the true worth of the corporation was but $20,000, and they borrowed money on the basis of such statements.

[4] As the plaintiff employed its surplus in its business, it must have been either as "invested capital" or as "borrowed capital." The surplus having never been distributed but during the entire period was retained in its own treasury, it could not have constituted "borrowed capital." The corporation could not borrow its own funds. And the shareholders could not loan what they at no time owned or had received. The surplus could not constitute "borrowed capital," borrowed from the stockholders, because the stockholders at no time had a right to it, either as against the corporation or the creditors of the corporation. The only way in which the shareholders could have reached their interest in this company, and the interest herein sought to be taxed, would have been by a liquidation of the concern. This "surplus," in our opinion, did not constitute "borrowed capital" but was "invested capital," and should have been so regarded by the officials of the government.

Judgment affirmed.