20 F.2d 510 (1927)
FLYNN, Collector of Internal Revenue,
v.
HAAS BROS.
No. 5102.
Circuit Court of Appeals, Ninth Circuit.
June 27, 1927.
George J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for plaintiff in error.
I. I. Brown, George E. Stoker, and Thomas, Beedy, Presley & Paramore, all of San Francisco, Cal., for plaintiff in error.
Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.
RUDKIN, Circuit Judge.
This was an action at law by Haas Bros., a corporation, to recover certain additional income and profit taxes imposed by the Commissioner of Internal Revenue. A jury was waived by written stipulation of the parties, and the case has been brought here for review on the special findings made by the court below, from which it appears:
That the plaintiff is a corporation organized under the laws of the state of California, engaged in the wholesale grocery business in the city and county of San Francisco, and is and always has been a close family corporation; that until his death, May 31, 1916, William Haas was the president and dominant head of the corporation; that on January 1, 1917, and during the year 1917, the capital stock of the corporation was $600,000, divided in 600 shares of the par value of $1,000 each, owned by members of the Haas family, and that during the calendar year 1916 the corporation earned a profit of $290,216.87 in the conduct of its business. That on January 8, 1917, the directors of the corporation adopted the following resolutions:
"Resolved, that the amount of $288,000 be credited to the reserve account and that $2,216.87 be carried forward to the profit and loss account of this corporation."
"Resolved, that this corporation does declare a cash dividend from the reserve account of $480 per share payable immediately to the stockholders of record on January 1, 1917, as they are respectively entitled thereto."
That the resolution declaring a dividend of $288,000 did not express the true intention of the board of directors; that in adopting *511 the resolution they merely followed a precedent in form and language, established in previous years, believing that this was the proper action to take; that they then understood and believed that a dividend was declared, when actually paid out of cash on hand available for that purpose, and not before; that they knew that the plaintiff had no funds out of which to pay dividends, and did not know or believe that the resolution thus adopted would impose any obligation upon the plaintiff, nor did they intend that it should; that neither the whole nor any part of the dividend of $288,000, as declared by the resolution, was ever actually distributed to the stockholders or set apart for their benefit; that the plaintiff did not at the time the resolution was adopted, or at any time prior to May 21, 1917, have any cash available with which to pay the dividend; that the earned profits of $290,216.87, out of which the dividend was declared by the resolution, consisted of merchandise on hand and accounts due from customers, and no physical division or allocation of such property was ever made to the several stockholders; and that no part of the profits or surplus was at the time of the adoption of the resolution, or at any time prior to May 21, 1917, capable of distribution or division, if the corporation was to continue to function as a growing business concern. That on May 21, 1917, the directors adopted the following resolution:
"That the surplus of this corporation be increased from two hundred thousand dollars ($200,000.00) to four hundred thousand dollars ($400,000.00).
"This additional amount to be raised by subscription of three hundred thirty-three 33/100 dollars ($333.33) per share by the stockholders of record on this date, according to the number of shares held by each."
That on the same day, without further resolution of the directors, dividends amounting to the sum of $88,000 were paid to the stockholders on their proportionate shares, out of cash then on hand; that interest at the rate of 6 per cent. per annum was paid to stockholders from January 1, 1917, to May 21, 1917, on the entire sum of $288,000; that the entries in the books of the plaintiff crediting the stockholders with their proportionate shares of the sum of $288,000, declared as a dividend by the above resolution, were technical bookkeeping entries and were not a record of any actual transaction; that the payment of interest to the stockholders on their proportionate shares was unauthorized, and such payments were made by mistake, and that the sum of $288,000, declared as a dividend by the aforesaid resolution did not thereby or otherwise become capital borrowed by the plaintiff from its stockholders, but, on the contrary, the whole thereof was a part of the invested capital of the plaintiff, used by it in its business at all times from January 1, 1917, to May 21, 1917. Upon the audit of the income and profit tax return of the plaintiff for the year 1917, the Commissioner of Internal Revenue reduced its invested capital from January 1, 1917, to May 21, 1917, by the sum of $288,000, and imposed an additional tax in the sum of $13,042.88; that the additional tax was paid under protest, and that a demand for a refund was rejected.
As conclusion of law the court found that the reduction of the invested capital of the plaintiff from January 1, 1917, to May 21, 1917, by the sum of $288,000, and the imposition of the additional assessment was unauthorized and unlawful. On these findings judgment was entered in favor of the plaintiff for the amount of the additional tax so imposed, with interest and costs.
The amount of profits depends in a measure on the amount of the invested capital. The term "invested capital" for any year, means the average invested capital for the year, averaged monthly. 40 Stat. 306, § 207 (Comp. St. § 6336 3/8h). In the case of corporations, it means (1) actual cash paid in; (2) the actual cash value, at the time of payment, of assets other than cash paid in; and (3) paid in or earned surplus and undivided profits used or employed in the business; but does not include money or other property borrowed by the corporation. 39 Stat. 1001, § 202.
The question before us is: Did the amount of the dividend declared by the resolution of January 7 cease to be a part of the invested capital of the defendant in error from and after the date of the resolution and until the adoption of the second resolution on May 21? Taken at its face value, the resolution would seem to have that effect.
"The declaration of a dividend is the act of the corporation in setting apart a portion of its net or surplus profits for distribution among the stockholders according to their respective interests." 14 C. J. 806.
"The declaration of a dividend creates a debt against the corporation in favor of each stockholder to the amount due him as to his pro rata share, and this is true although the dividend is made payable at a future date, or `at the pleasure of the company,' or `such time as may be directed by the board.'" Id. 815.
*512 "A dividend properly declared, and payable in cash, cannot be revoked by the subsequent action of the corporation. For example, it cannot be set off against a contemporaneous assessment upon the shares; nor has the corporation any power to transfer the amount of such dividend from the account of the stockholder to whom it has been credited and carry it to the surplus fund account of the corporation." Id. 816.
But, in cases of this kind, the rights of parties can neither be established nor impaired by the bookkeeping methods employed, or by the names given the various items. Douglas v. Edwards (C. C. A.) 298 F. 229, 234. The government was not estopped by the records kept by the corporation, and for the like reason, the corporation was not estopped by its own records, because every estoppel must be mutual. The court below found, in substance, that the resolution declaring the dividend did not express the true intention of the directors; that, in adopting the resolution, they merely followed a precedent, in form and language, established in previous years, believing this the proper course to pursue; that they understood and believed that a dividend was declared when actually paid out of cash on hand available for that purpose and not before; that they knew that the corporation had no funds with which to pay dividends, and did not know that the resolution would impose any obligation on the corporation, nor did they intend that it should. This finding we think is in accord with the testimony. In previous years when dividends were declared, the amounts were actually paid to the stockholders on the same day or not later than the day following. In this instance, no payments on account of dividends were made for a period of nearly five months, and, so far as the record discloses, no demands were made against the corporation. At the expiration of that period the directors concluded that there would be no cash available for the payment of dividends in excess of the sum of $88,000, and they then went through the formality of levying a stock assessment in the sum of $200,000, as an offset against the dividends previously declared. To all intents and purposes, the result was the same as if the directors had taken no action whatever until the date of the latter resolution, and had then declared a dividend of $88,000 only.
While the facts in the two cases differ, the language of the court in Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, 57, is applicable here.
"An examination of the resolutions, upon which the government relies in this case, shows that their adoption did not work a severance of the part declared from the remainder of the accumulated earnings. It created no separate fund distinct from the capital stock or surplus profits. No fund was at any time deposited anywhere to pay the so-called `dividend.' If at any time after the resolution was passed the company had failed, there was no fund `set aside' which had so become the property of the shareholders that it could not have been reached at any time by the creditors of the corporation. Moreover, at the time this so-called dividend was declared, there was no `fund' which could have been set aside, out of which it could have been paid in cash as the findings of fact made by the district judge show `that said sum of $391,892.13 was not in cash, but was invested in machinery, material in process, manufactured stock, accounts due from customers, and cash essential to the operation of the business; that no physical division or allocation of such property was ever made to the several stockholders."
It was contended on the argument that the judgment is excessive in any view of the case, inasmuch as at least $88,000 should have been deducted from the invested capital between January 1 and May 21. But in the view taken by the court below there was in effect no declaration of a dividend until the latter date.
The case is by no means free from doubt, but the conclusion reached by the court below is an equitable one, and its judgment is therefore affirmed.
DIETRICH, Circuit Judge (dissenting).
I recognize that, as stated by the majority, generally a writing is not conclusive against one who is not a party thereto, and that in a strict sense the principle of estoppel is inapplicable. But is that the real question here? Admittedly the declaration of dividend was effective as to stockholders, for in their brief counsel for the corporation say: "We concede that the resolution of January 8, 1917, was in terms a legal and effective declaration of dividend." And again: "In an action by the stockholder against his corporation to recover a dividend, we concede that the vital question would be whether the form (italics mine) of the resolution had the quality and effect of a valid dividend declaration. * * * In such instances it is not to be supposed that the directors could be heard to say that the plain language of their resolution was not intended to mean what it said."
*513 That being true, to what possible end the widest inquiry back of the declaration? Being effective to create a dividend, indefeasible as to stockholders, thus constituting a corporate obligation of indebtedness enforceable at law, it was of necessity equally effective to reduce capital investment, for admittedly, in computing capital, debts are deductible. Suppose that by deed executed in due form the corporation had conveyed to its stockholders specific real estate theretofore a part of its capital investment; could it, while conceding the effectiveness and indefeasibility of the instrument as to the grantees, successfully contend that, because of some secret intention or understanding inconsistent therewith, which it could not assert as against them, the property continued to be a part of its capital investment? By hypothesis of validity as to stockholders, the deed in one case and the declaration of dividend in the other inevitably operates to establish the property status.
In the English & Mersick Co. Case (C. C. A.) 7 F.(2d) 57, cited in the majority opinion, the court said: "Mr. Cook in his authoritative work on corporations (7th Ed.) vol. 2, p. 1579, § 451, states that, `when a dividend out of the earnings of a company has been regularly declared and is due, it becomes immediately the individual property of the stockholder. There is at once a severance, for the use and benefit of the members of the corporation, of so much of the accumulated earnings as are declared; and the dividend thereafter exists as a separate fund, distinct from the capital stock or surplus profits. It then becomes the absolute property of the stockholders.' There is no doubt about the correctness of this statement of the law. It is abundantly sustained by the authorities, many of which are cited by the learned author."
But in the other aspect of the case, assuming that it was competent for the court to go back of the resolution, I am constrained to the same conclusion. Just what significance is attached by the court to the term "technical," as used in the findings, I do not understand. In a sense all minute and book entries are technical. Certainly here they were neither fictitious nor sham; and there is no contention that they were entered in bad faith or as a pretense. Nor am I able to comprehend how, under the evidence, it can be said the interest payments were unauthorized.
As in effect admitted, the facts may thus be stated: The corporation had actually earned a profit of over $290,000, which legally was subject to the will of the directors in respect of dividends. The directors, men of intelligence and business experience, duly passed a resolution which, it is conceded, "was in terms a legal and effective declaration of dividend," covering $288,000 of such profit. Being payable immediately, but not so paid, the dividend, together with interest thereon, was appropriately credited to the individual accounts of stockholders.
Nothing more appears to have been done until May 21st. It may be that the intervening historical event affected the business of the corporation, and particularly its capital requirements. But, however that may be, the May resolution neither vacates nor qualifies the resolution of January 8th, but in effect recognizes its validity and affirms it. Whatever may be the reasons, the directors were then of the opinion that more capital would be required than it was apparently thought to be necessary in January. Accordingly the provision for $200,000 to be raised by subscription, and this was forthwith procured by inducing the stockholders to contribute a ratable part of the dividend tacitly recognized as having been vested in them by the January resolution. The other $88,000 covered by the January resolution was at once paid to them in cash, together with interest upon the entire $288,000 from January 8th to May 21st. If at that time the January resolution was not understood to be what it purports to be, or was for any reason thought to be ineffective, I can conceive of no valid reason for the payment of interest, or, indeed, for the second resolution at all, for upon that hypothesis the entire $288,000 constituted invested capital, and the obvious course would have been simply to declare a dividend of $88,000 and leave the $200,000 where it was.
As it turns out, under the theory of the defendant in error, the $88,000 was at no time declared a dividend, though it was actually paid out as such. And as bearing both upon the so-called equities and the self-serving statement made by the two directors giving testimony as to the mental attitude, not only of themselves, but of their associates, in January, that they did not understand the legal effect of the dividend resolution, it is to be noted that, if it was what it appears to be, one of its immediate legal effects was to create a corporate obligation to pay interest, and the interest so accruing to them they not only accepted and still retain, but in the following year, in making up the company's tax return, the amount thereof was deducted as interest paid.
I am unable to see the materiality of the fact that on May 21st the $200,000 was not first paid in cash to the stockholders in satisfaction of the dividend, and then passed back *514 by the stockholders to pay their subscriptions. The underlying obligations are none the less real, because a bank by mere book entries applies a credit balance of a depositor's account to the satisfaction of his overdue note.
So, also, the fact that on January 8th the corporation was not in cash sufficient to cover the dividend is without substantial probative value. It was its right to borrow the funds from a bank, or, if it so elected, from the stockholders. The latter course it pursued, and whether it paid interest to the bank or to the stockholders is immaterial.
The amount of the dividend may in the abstract seem large; but it loses significance when it is borne in mind that the daily cash receipts of the corporation ranged from $30,000 to $60,000. Taking the lowest figure, the obligations could have been liquidated out of 10 days' current income.
As I read the record, all the substantial facts are consistent with the theory that the January resolution is what it purports to be, and are at variance with the belated and self-serving protestations of a different understanding.