**LANDESMAN–HIRSCHHEIMER CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5591.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1930.

Irwin N. Loeser, of Cleveland, Ohio, for petitioner.

S. D. Hanson, of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, C. M. Charest, and DeWitt M. Evans, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The two questions here presented are whether, in the computation of excess prof-

its taxes for the year 1919, the Commissioner and the Board should have included in the petitioner's invested capital (1) an item amounting to $25,244.79, carried as a reserve for cash discounts at the beginning of the year 1919, and (2) an item amounting to not less than $81,250, representing the value of intangible property, namely, good will paid in to the petitioner upon its incorporation in 1896, in consideration of stock issued to members of the partnership to whose business petitioner succeeded.

The record upon the first question is incomplete for its determination, in that neither the original nor the amended returns are included, and the evidence contains no financial statement as of the close of business December 31, 1918, nor other testimony as to the amount of accounts receivable, their true value, or the method by which such value was determined. It is only stipulated that the Commissioner fixed the statutory invested capital at $1,129,554.95, and that "this amount does not include the balance as of December 31, 1918, in the account known as Reserve for Discount in the amount of $25,-244.79." It also appears that cash discounts during the year amounted to $62,030.18, of which the taxpayer was allowed a deduction from income only in the sum of $58,402.40. This error of the Commissioner was corrected by the Board of Tax Appeals, which ordered the further deduction, from income, of the difference of $3,627.78. Thus in the adjustment of its accounts the petitioner has been allowed, as a deduction from income, the precise amount of cash discounts taken during the tax year. This, we think, was proper.

Ordinarily the true reserve is regarded as that part of the earned surplus which has been merely segregated, or appropriated for some contemplated capital expenditure. Surplus, however, is merely a balance figure ascertained by deducting the sum of the par or stated value of the capital stock and the other liabilities from the value of all assets. If any item upon the asset side of the statement be increased, the surplus is correspondingly increased. But the income tax laws are predicated upon the assumption of a true valuation of both tangible property and choses in action. It follows that, where a reserve is created to take care of depreciation or obsolescence, or to provide for that portion of accounts receivable which, in all probability, will never be collected, the function of such reserve is not to provide for contemplated capital expenditure, but rather to prevent an unwarranted increase in surplus, by limiting

the particular asset item to its true value. In the case of accounts receivable, such purpose is to show the probable, true, present value of the accounts, or that sum which it is expected will be realized from such accounts. This is an income item, and the amount of discounts actually taken during the current year is properly handled in the profit and loss statement for that year or by deduction from current income, figuring the amount of such income as the sum of the undiscounted items, deducting the discount and thus arriving at the actual or true income. These probable future deductions from income can in no true sense be said to be capital embarked by the stockholders in the enterprise, or earned therein, for, if the discount be taken, it will not have been earned. The real situation could better be shown by deducting the amount of the reserve from the total of the accounts receivable, on the asset side of the statement, and thus fixing the valuation of accounts receivable at that sum which is probably collectible thereon.

The showing made is wholly insufficient to warrant any other conclusion than that the reserve which was disallowed was of the type above mentioned. But even if it be conceded that it is proper to value the accounts receivable at their face value, as a pro tem. or contingent investment in the business, and to set aside a portion of the surplus to offset anticipated discounts, the record still fails to show that the Commissioner's determination of the total amount of invested capital was in truth and in fact insufficient and erroneous. We have only the stipulation that the amount of the reserve for discounts was not included. Non constat that other items may not have been included at valuations sufficiently above their true value to more than offset this reserve item. An error could only be shown by evidence of all items of the statement and proof of their verity.

The chief insistence on the part of the petitioner is that the Commissioner and Board erred in refusing to include an item of at least $81,250 as good will, in arriving at the amount of invested capital. No item of good will was included upon the asset side of the petitioner's financial statement from the time of its organization in 1896 to the present time. The business was founded in the year 1875 and was carried on as a sole proprietorship until 1880, when Landesman, the founder, took a partner. It was conducted as a partnership from 1880 to January 2, 1897, when a book value of $273,346.21 of assets

of the partnership was turned over to the petitioner in return for $249,000 par value of capital stock. The corporation set up a reserve for discounts on accounts receivable of $7,439.08, which item may or may not fall within the principles above discussed, and the remaining excess of assets over liabilities was treated as a paid-in surplus of $15,-907.13. As already stated, the assets contain no item of good will, although undoubtedly the good will of the business passed to the corporation and was of substantial value. The sole question is whether, more than twenty years later, this item may be inserted nunc pro tunc, to increase the valuation of assets adopted by the parties, with a corresponding increase in paid-in surplus, simply because it must be conceded that the good will, whatever it was, passed to the corporation, and that it was a thing of value.

Section 326 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1092, defines "invested capital" as: "(1) Actual cash bona fide paid in for stock or shares; (2) Actual cash value of tangible property, other than cash bona fide paid in for stock or shares * * *; (3) Paid-in or earned surplus and * * * (4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest."

 It may be conceded that the good will of the partnership at the time of incorporation was intangible property which was paid in as part consideration for the shares issued for the aggregate of tangible and intangible property, but, even conceding this fact, we are met by the condition (b) limiting the sum, which is permitted to be included in invested capital, to the par value of stock or shares "issued therefor." With reference to tangible property the act provides that the included value shall "in no case exceed the par value of original stock or shares specifically issued therefor." We see no distinction of expressed intent between the language there used and that used with reference to intangible property. On the contrary, we are of the opinion that, in order to warrant the inclusion of good will, a valuation must have been placed upon it as of the time it was acquired, and such valuation must have consciously formed the consideration for, and operated to discharge the subscriber's

liability arising out of, the issue of a specific amount of capital stock. It is authoritatively determined that "invested capital" is to be determined upon actual "cost" to the individuals organizing and conducting an enterprise, plus surplus accumulated in such business from earnings (not write-ups), and retained for its conduct. La Belle Iron Works v. U. S., 256 U. S. 377, 388, 41 S. Ct. 528, 65 L. Ed. 998. The idea carries with it that of the conversion of wealth from one form to another by that which is in effect a sale of property to be paid for in stock, and the act limits the values to be included in invested capital, not only to the actual cash value of the property so sold or transferred, whether tangible or intangible, but likewise to the par value of the stock or shares which formed the consideration for the purchase. That which is given to the corporation without this consideration of stock issued, or without the specified quid pro quo, is not to be considered as augmenting the original invested capital. Thus under the congressional definition, borrowed money, or property obtained by bond issues, is not to be included. Cf. Baker & Taylor Co. v. U. S., 26 F.(2d) 187 (C. C. A. 2).

Nor can a valuation of good will as of that time be now included in invested capital as part of the surplus then paid in but inadvertently omitted from the statement. Surplus is but a balance figure, and would be increased by any addition to the assets; but the effect of the statutory definition of "invested capital" is, we think, to definitely limit and restrict the extent to which good will or other intangible assets may be used to so increase the paid-in surplus. The provision of the act covering paid-in surplus being general, and the restrictions upon the inclusion of intangible property in invested capital being specific, the limitations provided with reference to such intangible property must apply, and prevent that which cannot be considered part of invested capital as intangible property from being so considered as part of paid-in surplus.

The petitioner relies principally upon the decision of the Circuit Court of Appeals for the Second Circuit in Pfleghar Hardware Specialty Co. v. Blair (C. C. A.) 30 F.(2d) 614. We see nothing in this case inconsistent with the views expressed above. In that case, a going business organized prior to March 1, 1913, was sold in 1919. The only question involved was whether a profit was realized upon such sale, and this depended upon the March 1, 1913, value. The case

holds, and rightly, that the March 1, 1913, value of the business must include, not only the original cost or initial investment, but also such valuation of good will as was determinable by recognized formula, as of March 1, 1913. The case in no way involved the question here presented, viz., whether good will had, upon incorporation of a business, passed to the corporation as a gratuity; or whether it had been sold to the corporation, and passed as consideration for the issue of definite shares of capital stock.

We conclude that the petitioner has failed to show an initial investment in an amount exceeding the par value of the stock issued upon incorporation unless and except to the amount of tangible property clearly and substantially in excess of such par value, which under the act may be treated as paid-in surplus, and that there is no showing that this paid-in surplus, at most $23,346.21, was not included in the Commissioner's estimate of invested capital.

The decision of the Board of Tax Appeals is therefore affirmed.