## UNION LAND CO. et al. v. COMMISSIONER OF INTERNAL REVENUE
### No. 4345.

Circuit Court of Appeals, Seventh Circuit. Dec. 11, 1930.

Rehearing Denied Feb. 14, 1931.

W. W. Spalding, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, F. Edward Mitchell, and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Petitioners are aggrieved because of the imposition of an additional sum of $40,606.16 on their 1919 income tax. The determination of a single controverted issue is decisive of this appeal. What was the invested capital of the taxpayers for the year 1919?

Petitioners, together with Mount Emily Timber Company, filed a consolidated income tax return for the calendar year 1919 with the Commissioner who disallowed part of the asserted invested capital and thus increased the rate on the taxable income. An appeal to the Board of Tax Appeals resulted in a partial modification of the Commissioner's findings and adjudication. The Mount Emily Timber Company was, for the purposes of taxation, found to be affiliated with the other petitioners, and its invested capital of $1,124,645.56 was added to the invested capital of the petitioners. Its income for the year 1919 was nominal.

The Board of Tax Appeals sustained the Commissioner, however, in his rejection of petitioners' contention that $3,010,000 should be added to the invested capital of the Union Land Company and the Kinzel Lumber Company. The correctness of this ruling is the precise and narrow question before us.

The facts upon which the decision turns are undisputed. On March 24, 1914, A. H. Stange, principal stockholder of the A. H. Stange Company, organized the Union Land Company, and a few weeks later, the Kinzel Lumber Company. About the same time he transferred much of his stockholdings in the A. H. Stange Company to his children, so that he and each of them owned one-seventh of the stock of that corporation. Property of the book value of $3,491,382.61 was then transferred by the A. H. Stange Company to the petitioner, Union Land Company, and of the value of $305,000 to the Kinzel Lumber Company. Stock was issued by the newly formed companies to the stockholders of the A. H. Stange Company in the same proportion as said stockholders held stock in the latter company. The total par value of the stock of the Union Land Company was $245,000 and the total par value of stock in the Kinzel Lumber Company was $105,000.

The Union Land Company then issued debenture notes in the amount of $3,185,000 to the stockholders against accounts payable amounting to $3,234,000. The balance, $49,000, was paid by said company to its stockholders. The Kinzel Lumber Company issued stock to the amount of $105,000 and distributed $70,000 in cash and issued $140,000 of debenture notes similar in terms to those issued by the Union Land Company to its stockholders. Each debenture became due in twenty years and drew no interest. The

land company reserved the right to retire the debentures whenever it saw fit before the date of maturity and some of these debentures were retired prior to 1919. The debentures were ordinary promissory notes. Each contained the additional provision:

"The issue can only be retired in payments of $35,000 or multiples thereof of any of said series and only in the numerical order of any of said series.

"This note, with all other outstanding notes of Series A, B, and C, shall be a first lien, on all of the assets of Union Land Company, which corporation agrees with the bearer or registered holder hereof that it will not mortgage its real or personal property while this note or any other notes of this issue remains outstanding and unpaid. This note may be registered in the name of the holder on the books of the company. Otherwise, shall pay by delivery and without endorsement."

A similar question to the one here presented was decided by the Board of Tax Appeals (Appeal of A. H. Stange Company and Kinzel Lumber Company, 1 B. T. A. 58) in favor of the respondent. Likewise, the case of Charles H. Stange v. U. S., 63 Ct. Cl. 395, decided by the Court of Claims and the case of Union Land Company v. U. S., 67 Ct. Cl. 525, present phases of similar questions but the decisions in these two cases are not determinative of the question before us.

The controlling statutes are: Revenue Act of 1918 (40 Stat. 1091)

"Sec. 325. (a) That as used in this title— * * *

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise. * * *

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section);

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess

of such par value, in which case such excess shall be treated as paid-in surplus:

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;
* * *

"(b) As used in this title the term 'invested capital' does not include borrowed capital. * * *"

Pertinent Department rulings are: Regulations 45 (1920 Ed.)

"Art. 812. *Borrowed capital; securities.* —Any interest in a corporation represented by bonds, debentures, or other securities, by whatever name called, including so-called preferred stock, if with respect to the payment of either interest or principal it ranks with or prior to the interest of the general creditors, is borrowed capital and can not be included in computing invested capital. Any such preferred stock may, however, be so included if it is deferred with respect to the payment of both interest and principal to the interest of the general creditors.

"Art. 813. *Borrowed capital; amounts left in business.*—Whether a given amount paid into or left in the business of a corporation constitutes borrowed capital or paid-in surplus is largely a question of fact. * * * The general principle is that if interest is paid or is to be paid on any such amount, or if the stockholder's or officer's right to repayment of such amount ranks with or before that of the general creditors, the amount so left with the corporation must be considered as borrowed capital and be so treated in computing invested capital.

"Art. 1543. *Distributions which are not dividends.*—A distribution by a corporation out of earnings or profits accumulated prior to March 1, 1913, or out of any assets except earnings or profits accumulated since February 28, 1913, is not a dividend within the meaning of the statute. * * * In determining whether a distribution is made out of earnings or profits accumulated after or before March 1, 1913, due consideration must be given to the facts and mere book entries increasing or decreasing the surplus will not be conclusive."

We find it impossible to escape the contentions of respondent. First as to the Union Land Company: It was organized with a capital of $245,000. To it were transferred assets of a fair market value of about $3,500,-000. $245,000 of this was charged off against the stock issued to the stockholders. Deben-

tures aggregating $3,185,000 were issued against the credit balance which the stockholders had with the company after paying for the stock. The balance, $49,000, was paid in cash to said stockholders apparently as part of the plan of the organizers.

A similar crediting and debiting of assets and accounts took place in the dealings of the Kinzel Lumber Company with its stockholders.

Section 326(b) provides the test by which the issue must be determined. "As used in this title the term 'invested capital' does not include borrowed capital." Were the debentures "borrowed capital"? If so, the sum represented by them could not be included in invested capital. Petitioners argued that, if the debentures be not invested capital, they were dividends. The fallacy of this last contention only serves to confirm the conclusion that the debentures were borrowed capital. That the debentures were not dividends of the Union Land Company and the Kinzel Lumber Company is obvious. Whatever may be said of the holding that the transaction of the A. H. Stange Company constituted a declaration of a dividend by that company as held in the case of C. H. Stange v. U. S., supra, it is clear the two petitioners, Union Land Company and the Kinzel Lumber Company, declared no dividend. These two companies received assets largely in excess of the stock issued against them and they each credited each stockholder with his pro rata share of a certain amount of cash and his pro rata share of the excess of assets over stock and cash and evidenced such credits to such stockholders by their debenture notes. The execution of the promissory note by one to another ordinarily establishes a status of debtor and creditor. The creation of such a status is ordinarily inconsistent with that of certain other relationships such as arise where there is a corporate surplus or undivided profits or declaration of dividends.

Confusion, if any, results from a failure to keep the transactions of the A. H. Stange Company separate from the activities of the Union Land Company and the Kinzel Lumber Company. When the assets of the A. H. Stange Company were transferred to the two petitioners, the A. H. Stange Company, may, thereby, have declared a dividend. Whether the A. H. Stange Company declared a dividend is of no consequence. Our concern is with the transactions of the two petitioners and in their dealings with their stockholders. Petitioners, to whom large amounts of property were transferred, at once gave credit therefor to the stockholders. The transfer of assets of the A. H. Stange Company to petitioners and the petitioners' issuance of certificates of stock to the stockholders resulted in the creation of two liabilities. The stockholders became indebted to the two companies for the par value of the stock issued to them. The companies became indebted to the stockholders for the excess of the property transferred by A. H. Stange Company over the par value of the stock issued. The companies recognized this credit and met it, first, by issuing the debentures which were ordinary promissory notes; and, second, by paying the balance in cash to the stockholders. The distribution of the cash confirms the conclusion that the property not represented by the stock constituted credit items in favor of the stockholders. If there otherwise existed doubt as to the position of the assets and the rights of the stockholders therein, it is removed by the companies' issuing their debenture notes which unequivocally established the relation of debtor and creditor. This status was not shaken by the noninterest-bearing and the long-maturity features of the notes.

We conclude, therefore, that the indebtedness represented by the debenture notes must be excluded in determining the amount of the invested capital of the petitioners for the year 1919.

But there is here an element of very substantial value to the taxpayers which, in the application of the taxing statute, may well be considered in the light of invested capital, to the extent that this value can be fixed. It arises out of the fact that the taxpayers' indebtedness as represented by the debentures bears no interest. This is highly significant when it is considered that by the terms of the debentures they had yet fifteen years to run from the tax year in question. The taxpayer thus had the present advantage and value of the right to defer payment of the debentures for fifteen years without interest. This value to the taxpayer may be fairly measured by the difference between the face value of the debentures, and their present value in 1919, computed on the basis of a then reasonable interest rate. We find such interest rate to have been 6 per cent., and the then present value of the debentures, with money at that interest rate, we compute to be substantially 50 per cent. of the face of the debentures.

Adopting this computation as sufficiently accurate for all practical purposes, we reach the conclusion that the taxpayers' invested capital as it was determined by the Board of

Tax Appeals should be increased by an amount equal to 50 per cent. of the face of the then outstanding debentures.

The order of the Board of Tax Appeals is reversed, with directions to redetermine petitioners' taxes for the year 1919 in accordance with the views here expressed.