**H. H. HORNFECK & SONS, Inc., v. ANDERSON, Collector of Internal Revenue.**

No. 343.

Circuit Court of Appeals, Second Circuit.

July 11, 1932.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Robert H. Koehler, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff company is a corporation formed on May 8, 1916, in succession to a firm of two partners which had done the same business. The value of the firm's assets was $206,771.49 against which it had debts of $65,474.92. From their cash the

partners took out $10,000, which they used to subscribe for corporate shares, this being the whole stock issued at the time. The rest of the assets they conveyed to the company, which assumed the existing debts, and, in consideration of the transfer, set up credits on its books to the amount of $131,296.57, in their favor, divided, about $73,000 to one partner and $58,000 to the other. These credits were "payable on demand," but subject to the existing firm debts, and to all others which the company might incur in the future, "so that at all times * * * creditors * * * shall have a lien and claim upon the assets * * * prior to the aforesaid indebtedness." Thus the partners who were the only directors and shareholders, had $10,000 of shares, divided equally, and credits in the amounts just mentioned. On April 1, 1918, the company issued $45,000 more of its shares to each of the partners in cancellation pro tanto of its indebtedness to them, reducing the joint credit to $41,296.57, then divided about as twenty-eight is to thirteen. The principal question raised by the appeal is whether the property represented by this amount shall be included in "invested capital" for the purpose of computing the "excess profits tax" for the year ending January 31, 1920. The Commissioner treated it as "borrowed capital" under section 326 (b) of the Revenue Act of 1918 (40 Stat. 1092) and the Board of Tax Appeals affirmed his ruling on April 3, 1926. After paying the tax so computed, the plaintiff sued the collector to recover it. The judge held with the plaintiff under our decision in Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, and the collector appealed.

The decision appears to us right. The "credit" was indeed a debt; it was not a condition upon payment that the company should have paid all its other creditors, though these had a prior "lien" upon its property. If for instance there had been enough quick assets in the treasury to answer all existing claims, apparently the shareholders might demand their credit, or at least so much as left the "lien" unimpaired; they were not therefore like preferred shareholders, who must wait for a liquidation; the condition might be fulfilled during the life of the business. Were the shareholders to sell their shares, retaining their claims, it might indeed be difficult not to say that thereafter the claims became "borrowed capital" within section 326 (b). Nevertheless, while their holdings remained

as they were, the two partners were merely coadventurers in the enterprise in both capacities, as creditors and as shareholders; and it would deny the substance of the transaction to treat them otherwise. The company was no doubt a new legal person, and owed the debts; for ordinary purposes it made no difference that the lenders were also shareholders, even though their claims were subordinate to those of other creditors. But we are dealing with a statute designed to tax unusual profits, which we must construe with its purpose in mind. The exclusion in the section of "borrowed," from "invested," capital is to insure the allowance as a basis for the calculation of the tax percentages, of only so much as the shareholders have at stake in the enterprise. Sums borrowed from another group of persons are not at the shareholders' risk; the share of the lenders in the profits (interest), is excluded from taxable income, and correspondingly, for purposes of computing invested capital the assets are treated as though already allocated pro tanto to the debt. It may indeed be possible even under this statute for a shareholder to occupy a double position; to be truly a lender, qua creditor, and a coadventurer, qua shareholder; but the form of his contract does not determine it; he and his fellows are not lenders—whatever form of words they use—if as a class they lend to themselves pari passu as shareholders. The only embarrassment in the case at bar arises from the fact that the credits were not equally divided, as were the shares; but this seems to us irrelevant, because the same group was on each side of the transaction. Possibly if the single owner of a business were to receive a credit for the assets, even if subject to all present and future debts, his claim would be "borrowed capital," though he owned a share or two; but when, as here, all are equally in each class, some inequality in distribution need not upset the conclusion that the assets were not "borrowed," and that the interests of both in each aspect were at the risk of the venture. The section is to be read colloquially, rather than by legal analysis. Nor would it disturb our conclusion, if by a sale of the shares, the credits should change into "borrowed" capital; for such a separation of interest would result in creating two kinds of rights, of which the credits would be in hostility to those of the shareholders.

The regulations (Regulations 45, article 813), appear to provide for such arrangements. They recognize that the phrase,

"borrowed capital," may cover a variety of situations which are not to be dealt with by fixed principle, but as a "question of fact"; they lay down as a regulative, though not a constitutive, guide that deposits of shareholders left in the business are to be treated as "borrowed capital" only in case the "right to repayment * * * ranks with or before that of the general creditors." In Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, where the shareholders had been credited with profits which they did not understand to be debts of the company, we held that they had not "borrowed" the credits. See, also, Davidson & C. L. Co. v. Motter (D. C.) 14 F.(2d) 137. Zenith Milling Co. v. Lucas, 41 F.(2d) 905 (C. C. A. 8), went the other way upon a complicated arrangement, under which the shareholders were to be allowed to withdraw credits on which interest was given. All that was actually decided was that the question was one "of fact," which, having been determined by the Board of Tax Appeals, would not be disturbed; the court did not interpret the transaction as res nova. Union Land Co. v. Commissioner, 45 F.(2d) 944 (C. C. A. 7), involved an issue of debenture notes, which so far as appears, were not to be distinguished from any other debts; which "ranked with general creditors." There could be little doubt that these were "borrowed capital." Flynn v. Haas Bros., 20 F.(2d) 510 (C. C. A. 9), went further than we need now; it apparently allowed the unexpressed understanding of the directors of a company to control their formal resolution; in this respect being like Eaton v. English & Mersick Co., supra (C. C. A.) 7 F.(2d) 54. Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540, is like the case at bar, the credits being found to be subordinate to general creditors.

Of the assets transferred to the company, $20,000 was for the value of the firm's good will, and was "invested" capital, unless excluded for other reasons. It was not however originally "paid in for stock or shares" under section 326 (a) (5), 40 Stat. 1092, nor was it "paid in surplus," under section 326 (a) (3). Landesman-Hirschheimer Co. v. Com'r, 44 F.(2d) 521 (C. C. A. 6); Crossett Co. v. U. S., 50 F.(2d) 282 (Ct. Cl.); Prentiss & Co. v. U. S., 57 F.(2d) 676 (C. C. A. 2). The second is clearly true, since otherwise there would be no means of limiting the allowance to twenty-five per cent. of the total share capital. Section 326 (a)(5), (c). Thus until April 1, 1918,

when $90,000 of shares were issued in consideration of the cancellation of a like amount of the credits, no part of the good will was "invested capital." The question is whether any part of it is to be allocated against the shares then issued; so far as it is not, it cannot now be treated as "invested capital." In Prentiss v. U. S., supra (C. C. A.) 57 F.(2d) 676, a predecessor company had conveyed a mixed fund of "tangibles" and "intangibles," and we allocated the shares altogether against the first; but this was because the company had so allocated the "tangibles" on its books. Here there was nothing of the sort; the $90,000 of shares were issued generally against the credits, and these were set up generally against the mixed fund. Shares represent ownership in the property as a whole; and while the shareholders are indeed owners of the surplus, when it becomes necessary to appropriate part of the assets to shares—a wholly artificial conception in any case—there appears no reason to prefer "tangibles." Certainly there is none in the statute itself. Section 326 (a) requires shares to be "specifically issued" for "tangibles"; yet no one would say that because no allocation was "specifically" made, the shares did not represent "tangibles" at all. There is not even this requirement as to "intangibles"; it is enough that they are "paid in for" shares. When nothing appears to the contrary, the only rational method is to allocate shares against both classes according to their relative value. Landesman-Hirschheimer Co. v. Com'r, supra (C. C. A.) 44 F.(2d) 521, and Crossett Co. v. U. S., supra (Ct. Cl.) 50 F.(2d) 292, contain nothing to the contrary. Hence the amount of the good will against which the remaining credit stood was that proportion of the original credit which it represented; as twenty is to one hundred and thirty-one. To this extent the credit was not "invested capital."

The plaintiff asserts that there should be also included in its invested capital an item of $32,273.09, credited to the partners as their salaries while acting as officers of the company from the time of its organization until January 31, 1919. This because the salaries were the same kind of debt as the credits set up to pay for the assets on their transfer on May 8, 1916. Whatever may be said for this as an original matter, the claim is not before us. In its return for the year ending January 31, 1920, the company set up an invested capital of $173,569.66. The Commissioner reduced this to $85,569.-

66, on September twenty-sixth, 1924. On October third of that year the company claimed an addition of only $41,296.57, made up as indicated above; it repeated this claim on November eleventh of that year. Its claim for refund, made on April 8, 1927, was limited to the same item; it said nothing of officers' salaries, though it demanded an amount, which was not due unless the additional $32,273.09 was included in invested capital. A claim for refund must set out the grounds upon which it rests (United States v. Felt & Tarrant Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025); the claim at bar stands without any support, except as to the original credit. Similarly the claim for refund did not mention an item of one hundred and forty-two dollars, income tax alleged to be wrongfully collected for the year ending January 31, 1919. Furthermore, the complaint contains no allegations which would support a right of action for more than the original credit, though again the ad damnum clause is large enough to include both the items now in question. The plaintiff must recover *secundum allegata*; it cannot make out a case merely by demanding more money than the facts alleged warrant.

Judgment reversed and cause remanded for further proceedings in accordance with the foregoing opinion.