### DAVIDSON & CASE LUMBER CO. v. MOTTER, U. S. Collector of Internal Revenue.

(District Court, D. Kansas. March 2, 1926.)

No. 827.

1. Internal revenue ☞7(10), 9(27)—Accumulated profits credited to stockholders, but not declared as dividend nor distributed, held "invested capital" of corporation (Revenue Act 1918, § 326 [a] [3], being Comp. St. § 6336⅟₁₆i).

Accumulated profits of a corporation, credited on its books to the individual stockholders in proportion to their stock, but neither declared as a dividend nor distributed, and which remained in the treasury and was used in its business, held "invested capital" within Revenue Act 1918, § 326 (a) (3), being Comp. St. § 6336⅟₁₆i.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

2. Internal revenue ☞7(11), 9(27)—Profits from sale of property assessable in year when binding contract of sale is made (Revenue Act 1918, § 213 [a], being Comp. St. § 6336⅛ff).

Where a corporation contracted in 1919 to sell real estate at a profit for $110,000, receiving $10,000 down, the remainder to be paid and deed delivered June 1, 1920, the sale was made in 1919, within Revenue Act 1918, § 213 (a), being Comp. St. § 6336⅛ff.

3. Internal revenue ☞7(4), 9(27)—Dividend declared March 27 deemed to have been from earnings of current year (Revenue Act 1918, § 201 [e], being Comp. St. § 6336⅛b).

Under Revenue Act 1918, § 201(e), being Comp. St. § 6336⅛b, a dividend declared by a corporation March 27, 1918, is deemed to have been made from earnings of 1918.

At Law. Action by the Davidson & Case Lumber Company against H. H. Motter, Collector of Internal Revenue. Judgment for plaintiff for part of claim.

Warren Wattles, of Washington, D. C., and George Gardner, of Wichita, Kan., for plaintiff.

A. W. Gregg, Sol. Internal Revenue, and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and Al. F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan., for defendant.

POLLOCK, District Judge. This is an action at law, brought by the Davidson & Case Lumber Company, as plaintiff, against defendant as collector of internal revenue, to recover income and excess profits taxes paid by plaintiff under the income excess and war profits tax provisions of the Revenue Act of 1918 (40 Stat. 1057). All conditions of the law precedent to be had and done by plaintiff to enable it to bring and maintain this action have been done and performed. The questions raised for decision in order to determine the rights of the parties may be briefly stated, as follows:

(1) Did the invested capital of plaintiff during the period from January 1, 1918, to June 22, 1918, include the sum of $150,000 standing on the books of the corporation to the credit of the individual stockholders, neither declared as a dividend to its stockholders or paid out by the corporation to the individual stockholders, constitute during said time invested capital of the corporation?

(2) Plaintiff for many years had and did own in the year 1919 certain real estate in the city of Wichita, which it had employed as a lumber yard in the conduct of its business, and which it sold at a considerable profit. Was this sale of the real estate made in the year 1919 or the year 1920, and was this profit made taxable under the act as of the year 1919 or 1920?

(3) Was the dividend of $40,000 declared by the corporation to its stockholders as of date March 27, 1918, a dividend paid by the company in the year 1917 or in the year 1918?

A jury to try the issues was waived, and the case tried by and submitted to the court without a jury, and stands now fully tried, briefed, argued, and submitted for decision on the facts and the law of the case. The above-stated questions will in their order stated be considered together with a brief statement of the facts as to each.

[1] I. The plaintiff is what is known as a close corporation; that is to say, a corporation the capital stock of which is held by few shareholders. Before being incorporated, it had conducted the lumber business as a partnership. On December 31, 1917, the net accrued profits of the business, as shown by the books of the corporation, amounted to some $150,000, and as of this date the sum was credited on the books of the company to the individual accounts of the stockholders with the corporation, but was in fact at no time paid out by the corporation to the stockholders or declared as a cash dividend on their stock, but at all times until June 22, 1918, remained in the business of the corporation. On that date the capital stock of the corporation was increased, and shares of the increased capital stock to the amount of $150,000 were issued to the shareholders in the corporation in proportion to the number of shares they had theretofore held.

It is the contention of the plaintiff during this time from December, 1917, to June 22, 1918, while this $150,000 stood so credited to the stockholders' accounts on the books of the company, but not paid out to them or declared as a dividend to the stockholders, it was invested capital of the corporation, and for taxable purposes the corporation should have it so considered in computation of its taxes under the act.

The act of 1918 defines its own terms employed, and among these definitions is found the term "invested capital," defined as follows, in so far as material here:

"Sec. 326 (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivision [b] and [c] of this section);

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash bona fide paid in for stock or shares;  *  *  *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year; *  *  *

"(b) As used in this title the term 'invested capital' does not include borrowed capital."  Comp. St. Ann. Supp. 1919, § 6336⁷/₁₆i.

Now, it follows, in considering the term "invested capital," if the money held by the corporation from December 31, 1917, to June 22, 1918, when the shareholders received shares in the corporation in lieu of cash, may fairly be said to fall within the term "invested capital," as defined in the act, the contention of plaintiff must prevail. If, on the contrary, the term "invested capital," as defined in the act, clearly excludes this sum of $150,000 from the invested capital of the corporation, then the contention of the defendant must prevail.

As the power of government being exercised under the act is the power of taxation of the individual citizen, if there are doubts arise as to the manner in which the power is attempted to be employed, such doubts will be resolved in favor of the citizen and against such exercise of the power. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; U. S. v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Smietanka v. First Trust & Savings Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391; Old Colony Trust Co. v. Malley (D. C.) 288 F. 903; Central R. Co. of N. J. v. Duffy (C. C. A.) 289 F. 354; and many other cases.

In the first place, it may be well to consider the legal status of this $150,000 during the period in controversy. Of course, in a general sense, this sum of accumulated profits, as well as all the corporate assets of the plaintiff not required to pay and discharge its corporate debts, belong to its shareholders and was represented by its corporate stock. When this sum was credited to the shareholders on the books of the corporation in proportion to the stock owned by each shareholder, it still remained under the control of the corporation and was tied up in its corporate property and used for its corporate purposes as fully as before. As it had not passed

from the corporation to the shareholder in the manner in which corporate earnings are usually transferred by the corporation to its shareholders, by the declaring of a dividend on its shares, it seems clear, if the $150,000 of accumulated profits involved had meanwhile been lost or destroyed, the loss must in law have fallen upon the corporation and not the shareholder. Therefore these accumulated earnings while employed by the corporation as a part of its corporate property and not by it declared to be the property of the stockholders, but constituted money held by the corporation arising from accumulated earnings invested in the corporate property in business, it was clearly invested capital of the corporation.

Again, as the title to this sum had not been in the manner provided by the law passed to the individual stockholders by a declaration of dividends on the capital stock, and as it had not been paid out by the corporation or company into the hands of the shareholders, it cannot be said to be a loan by the stockholders to the corporation or money borrowed by the corporation from the shareholders. This question appears to have been put at rest by the Supreme Court in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, wherein Mr. Justice Pitney, delivering the opinion for the court, and in speaking of a fund held by a corporation, said:

"For bookkeeping purposes, the company acknowledges a liability in form to the stockholders equivalent to the aggregate par value of their stock, evidenced by a 'capital stock account.' If profits have been made and not divided, they create additional bookkeeping liabilities under the head of 'profit and loss,' 'undivided profits,' 'surplus account,' or the like. None of these, however, gives to the stockholders as a body, much less to any one of them, either a claim against the going concern for any particular sum of money, or a right to any particular portion of the assets or any share in them unless or until the directors conclude that dividends shall be made and a part of the company's assets segregated from the common fund for the purpose. The dividend normally is payable in money, under exceptional circumstances in some other divisible property; and, when so paid, then only (excluding, of course, a possible advantageous sale of his stock or winding-up of the company) does the stockholder realize a profit or gain which becomes his separate property, and thus derive income from the capital that he or his predecessor has invested."

That case involved the reverse of the question here being considered—that is, at what time dividends of a corporation from accumulated profits in business should be taxed in the hands of the shareholder—and the further question, whether, under the Sixteenth Amendment, dividends paid in stock of the company were taxable under the Revenue Act of 1916 (39 Stat. 756). In concluding the opinion, Mr. Justice Pitney, delivering the opinion for the court, said:

"Thus, from every point of view, we are brought irresistibly to the conclusion that neither under the Sixteenth Amendment nor otherwise has Congress power to tax without apportionment a true stock dividend made lawfully and in good faith, or the accumulated profits behind it, as income of the stockholder. The Revenue Act of 1916, in so far as it imposes a tax upon the stockholder because of such dividend, contravenes the provisions of article 1, § 2, cl. 3, and article 1, § 9, cl. 4, of the Constitution, and to this extent is invalid, notwithstanding the Sixteenth Amendment."

Again, a situation very similar, if not identical, with the one at bar, was determined by the Circuit Court of Appeals for the Second Circuit in Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, in which Rogers, C. J., delivering the opinion of the court, said:

"As the plaintiff employed its surplus in its business, it must have been either as 'invested capital' or as 'borrowed capital.' The surplus having never been distributed but during the entire period was retained in its own treasury, it could not have constituted 'borrowed capital.' The corporation could not borrow its own funds. And the shareholders could not loan what they at no time owned or had received. The surplus could not constitute 'borrowed capital,' borrowed from the stockholders, because the stockholders at no time had a right to it, either as against the corporation or the creditors of the corporation. The only way in which the shareholders could have reached their interest in this company, and the interest herein sought to be taxed, would have been by a liquidation of the concern. This 'surplus,' in our opinion, did not constitute 'borrowed capital,' but was 'invested capital,' and should have been so regarded by the officials of the government."

I am of the opinion the $150,000 of undivided profits in this case, so long as it remained in the business of the company, had neither been declared or paid to the stockholders, remained invested capital, and the contention of the plaintiff must be upheld.

[2] II. We come now to the sale of real estate by the corporation. Was this sale for the purpose of assessing income or profit taxes under the act of 1918 made in the year 1919 or the year 1920?

A contract of sale by the corporation of certain real estate on which it had operated a lumber yard was made to solvent purchasers, able to pay at any time, on November 20, 1919. At that time $10,000 was paid in cash and a contract in writing was entered into between the corporation and the purchasers, conditioned alone on the title being found satisfactory to the purchasers. Some time in the month of December, 1919, the purchasers, having examined the title, removed this condition from the contract by advising the corporation the title to the property was satisfactory to them, and the contract of sale was thus made absolute. The contract provided for the payment of the remainder of the purchase price, $100,000, on June 1, 1920, and that conveyance should be delivered by the corporation to the purchasers at this time. Also the corporation, not being able to remove its business from the property, agreed to pay one-half the taxes for the year 1920 as a consideration for being permitted to remain on the premises. However, the dominion, control, burdens, and benefits of the property were passed to the purchasers in the year 1919 at the time the contract of sale was made absolute. The Revenue Act provides, in regard to the assessment of property under such conditions, as follows:

"Sec. 213 (a) That for the purposes of this title * * * the term 'gross income' includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property." Comp. St. Ann. Supp. 1919, § 6336⅛ff.

The question is, who owned this property in the latter days of the year 1919? As the right of the corporation to compel compliance with the terms of the contract was by the contract made dependent on the corporation delivering a good title to the purchaser, the contract remained conditional and dependent until the title had been examined and approved by the purchasers. As the corporation was notified this condition was met in the month of December, 1919, thereafter the conditional contract of sale became absolute in its terms, and any loss to the property or any benefits or advantage accruing thereto was the loss or benefit of the purchasers. To this end come not only the adjudicated cases on the question but the very reason of the thing itself. The Supreme Court of this state in Gordon v. Munn, 87 Kan. 624, 125 P. 1, Ann. Cas. 1914A, 783, said:

"The purchaser of land in possession under an agreement for a conveyance is considered the owner in equity, subject to the payment of the purchase money, and the vendor is treated as the trustee of the legal title. * * * The fact that possession was not transferred in this instance may be accounted for by the relationship of the parties."

In Law Opinion No. 988 of the Solicitor of Internal Revenue (cited in A. R. Memo 189, Cum. Bul. Treas. Dept. 1-2 O. 68), declared, as follows:

"In deciding whether the transaction was a sale, it is immaterial that legal title did not presently pass."

It was held in Law Opinion 988 (C. B. 2, p. 84):

"No gain or loss is realized by vendor until there has been in substance an exchange of assets by the parties to the sale. The time at which such exchange takes place will be determined from the facts in each case, considered from a practical business standpoint. The postponement of transfer of a legal title is not decisive. Usually when the vendee is put in possession and clothed with all the benefits and burdens of beneficial ownership, the sale will be considered complete, even though the delivery of the deed and the execution of a mortgage be postponed beyond that time.".

"Where a tract of land was sold on November 1, 1919, one-tenth of the purchase price accompanying the bid, four-tenths being paid in December, 1919, and the balance in January, 1920, at which time a proper conveyance of title was delivered to the purchaser, the sale should be treated as a cash transaction for 1919, and the entire profit realized be returned as income for that year." O. D. 568, T. B. 27-20-1037.

"Where an individual sold real estate, receiving in the year of sale over one-fourth of the total selling price, the contract providing that the balance should be paid in four annual installments thereafter, such deferred payments being secured by crop mortgages and additional collateral security, it has been ruled that the payments received in the year of sale were sufficiently substantial in amount to require the vendor to report in that year the entire profit realized on the sale." O. D. 569, T. B. 27-20-1038.

As the contract for the sale of the property, fixing the terms of the sale made, the amount of the purchase price to be paid, and all other of its terms, including the present

payment of $10,000, was performed in the year 1919, the amount of profits taxable must have been determined as of that year as readily and absolutely as of the date the conveyance was delivered and the deferred payment made. I therefore find as a fact the sale of the real estate in this case, while not perfected by conveyance and full payment of the purchase price until June, 1920, was made in the year 1919, as contended by the plaintiff in this case, and that the profit made in the transaction should have been included in the income and excess profits taxes of the corporation for the year 1919.

[3] III. Coming now to the third item of the tax, the dividend of $40,000 in dispute, will say, the Revenue Act seems to cover a case of the nature here presented in apt language, as follows:

The Revenue Act of 1918, § 201(e), reads as follows:

"Any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings or profits accumulated during the preceding taxable years; but any distribution made during the remainder of the taxable year shall be deemed to have been made from earnings or profits accumulated between the close of the preceding taxable year and the date of distribution, to the extent of such earnings or profits, and if the books of the corporation do not show the amount of such earnings or profits, the earnings or profits for the accounting period within which the distribution was made shall be deemed to have been accumulated ratably during such period." Comp. St. Ann. Supp. 1919, § 6336⅛b.

Considering the undisputed fact the dividend in this case was not declared, that is to say, so separated from the other corporate property and placed at the disposal of the stockholders that they might withdraw the same from the corporate treasury and apply to their individual use until March 27, 1918, in harmony with the authorities cited under the first question presented in this case, and notably the case of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, it must be held, under the act in question, the dividend was declared in the year 1918 and was then first taxable as income in the hands of the stockholder, and by a parity of reasoning until that date remained the property of the corporation employed by it in its corporate enterprises.

It follows, the dividend must be held as having been paid when declared March 27, 1919, and be apportioned as provided in the act. It follows, the matters presented must

be ruled as above indicated and a form of judgment in conformity with this opinion will be prepared by counsel for respective parties for entry by the clerk. It is so ordered.