**GEO. FEICK & SONS CO. v. BLAIR,
Commissioner of Internal Revenue.**

Court of Appeals of District of Columbia.
Submitted April 5, 1928.    Decided
May 7, 1928.

No. 4660.

1. **Corporations ⬥152—Dividend must be declared and fund for its payment separated from capital or surplus before title passes to stockholder.**

Before title to a dividend passes to stockholder, there must be declaration of dividend, and fund for its payment must be separated from capital or surplus profits of corporation.

2. **Internal revenue ⬥7(10), 9(27)—Surplus dividends, retained pursuant to agreement of stockholders, constituted invested capital in determining income and profits taxes (Revenue Acts 1918, 1921, § 326 [Comp. St. § 6336⅛i]).**

Surplus dividends, retained by corporation under agreement of stockholders for accumulation of its assets, remained property of corporation to be used in its business, and constituted a part of invested capital within meaning of Revenue Acts 1918 and 1921, § 326 (Comp. St. § 6336⅛i), in determining income and profits taxes.

3. **Internal revenue ⬥25—Court of Appeals, in reviewing decision of Board of Tax Appeals, may examine facts upon which conclusion is based (Revenue Act 1926, § 1003 (b), 26 USCA § 1226).**

Court of Appeals of District of Columbia, in exercise of jurisdiction for review of decisions of Board of Tax Appeals conferred by Revenue Act 1926, § 1003 (b), 26 USCA § 1226, may examine facts on which conclusion of board was based to extent of determining whether or not the law was properly applied in accordance with such facts.

4. **Internal revenue ⬥7(10), 9(27)—Accumulated salaries, retained by corporation pursuant to stockholders' agreement, not represented by note and not drawing interest, held "invested capital" in determining income and profits taxes (Revenue Acts 1918, 1921, §§ 325 (a), 326, Comp. St. §§ 6336⅛h, 6336⅛i).**

Accumulated salaries of stockholders, permitted to be retained by corporation pursuant to agreement for accumulation of assets, without representation by note or payment of interest thereon, constituted "invested capital" within meaning of Revenue Acts 1918, 1921, § 326, Comp. St. § 6336⅛i, and properly considered as such in determining income and profits taxes, rather than borrowed capital as defined by section 325 (a), Comp. St. § 6336⅛h(a).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

Appeal from the United States Board of Tax Appeals.

Proceeding by the Geo. Feick & Sons Company against David H. Blair, Commissioner of Internal Revenue, for the redetermination of income and profits taxes. From the decision of the United States Board of Tax Appeals affirming a decision of the Commissioner of Internal Revenue, petitioner appeals. Reversed and remanded, with directions.

D. J. Shorb and Ben Jenkins, both of Washington, D. C., for appellant.

Mabel Walker Willebrandt, L. L. Hight, and L. W. Scott, all of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the United States Board of Tax Appeals affirming a decision of the Commissioner of Internal Revenue in a proceeding for the redetermination of income and profits taxes for the years 1919, 1920, and 1921, in the amounts of $873.90, $1,351.12, and $2,509.26, respectively.

From the findings of fact contained in the opinion of the Board, it appears that appellant petitioner, an Ohio corporation, was organized in 1916, and took over the personal business of George Feick, Sr. When he transferred the business to the corporation, the assets were valued at $20,000. Two of his sons contributed $2,000 each, and the capital stock was issued 150 shares to George Feick, Sr., and 50 shares each to the two sons. Feick, Sr., transferred one qualifying share each to his wife and daughter, respectively.

At the time of the organization of the corporation, it was agreed that the salary allowed the sons, excepting $20 per week for one and $25 per week for the other, should remain in the business, and that the father should not draw any salary. The agreement was that they would wait and "leave all the assets they could accumulate, leave them in the business for awhile so that we would not have to borrow money to relieve the burden at that time. All dividends were to be added to the business."

Under this agreement, at the directors' meeting at the end of each year, it was determined the amount which should be credited to each of the accounts; and each of the individuals paid income tax on the amount so determined and credited on the books of the corporation. The corporation kept personal accounts for each of the individuals, and the share of the surplus dividends and the portions of the salary that remained in the business were credited to each of the individuals. The amounts so found were charged on the

liability side of the balance sheet as being the amounts due the officers and stockholders. The records of the corporation contained no entry to the effect that the accumulated salaries and dividends were to be kept in the business. This was done through the oral agreement between the three individual officers. The amounts shown each year on the books to be due to each of the individual stockholders, and standing to their credit, were not represented by notes, and no interest was paid on the amounts.

On December 31, 1918, there had been accumulated $13,818; on December 31, 1919, $26,522; on December 31, 1920, $44,106—representing the accumulated dividends and undrawn salaries which had been credited to the three individual stockholders on the books of the corporation. In its income and profits tax returns for the years in question, the amount so credited to its stockholders were returned as invested capital.

Upon auditing the returns, the Commissioner excluded the above amounts from "invested capital" and treated it as subject to taxation under the head of "borrowed money."

It is conceded by the Assistant Attorney General that the amount of accumulated dividends should not be excluded from appellant's invested capital. This concession is based on the authority of Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54; Flynn, Collector, v. Hass Bros. (C. C. A.) 20 F.(2d) 510; Davidson & Case Lumber Co. v. Motter (D. C.) 14 F.(2d) 137. In the Eaton Case, as in the present case, the surplus "was invested in machinery, material, and process, manufactured stock on hand, in accounts due from customers, and in cash, all of which was essential to the operation of the business."

Whether the accumulated dividends and salaries in this case are to be treated as invested capital is to be determined by the provisions of section 326 of the Revenue Act of 1918, 40 Stat. 1057 (Comp. St. § 6336⅛i), and the same section of the Act of 1921, 42 Stat. 227, 274 (Comp. St. § 6336⅛i), which provide as follows:

"Section 326 (a). That as used in this title the term 'invested capital' for any year means (except as provided in subdivision (b) and (c) of this section):

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment;
* * *

"(3) Paid in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;
* * *

"(b) As used in this title the term 'invested capital' does not include borrowed capital."

"Section 325 (a). That as used in this title * * * the term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise." (Comp. St. § 6336⅛h (a).

By section 1303 of the Act of 1921 (26 USCA § 1254; Comp. St. § 6371⅘cc), "The Commissioner, with the approval of the Secretary, is hereby authorized to make all needful rules and regulations for the enforcement of the provisions of this act."

In article 813 of Regulations 62, it is provided: "Thus indebtedness to stockholders actually canceled and left in the business would ordinarily constitute paid-in surplus, while amounts left in the business representing salaries of officers in excess of their actual withdrawals, or deposit accounts in favor of partners in a partnership succeeded by the corporation, will be considered paid-in surplus or borrowed capital according to the facts of the particular case. The general principle is that if interest is paid or is to be paid on any such amount, or if the stockholder's or officer's right to repayment of such amount ranks with or before that of the general creditors, the amount so left with the corporation must be considered as borrowed capital and to be so treated in computing invested capital."

[1] We have no criticism to make upon this regulation, since it does not apply to the present case. The Board has found that the amounts "were not represented by notes, and no interest was paid on the amounts." It is elementary law that before title to a dividend passes to the stockholder there must be a declaration of a dividend; and the fund for its payment must be separated from the capital or surplus profits of the corporation. When this is done, it becomes the property of the stockholder, and a debt of the corporation on which the stockholder may recover, and it is likewise exempt from action by creditors of the corporation. Cook, in his work on Corporations (7th Ed.) vol. 2, § 541, states the law as follows: "When a dividend out of the earnings of a company has been regularly declared and is due, it becomes immediately the individual property of the stockholder. There is at once a severance, for the use and benefit of the members of the corporation, of so much of the accumulated earnings as are declared; and the dividend

thereafter exists as a separate fund distinct from the capital stock or surplus profits. It then becomes the absolute property of the stockholders."

[2] It is clear, as conceded by the counsel for the government, that the surplus dividends under the agreement of the stockholders in this case remained the property of the corporation to be used in its business, and as such a part of its invested capital. In respect of the agreement of the stockholders and the bookkeeping entries, the Supreme Court, under similar circumstances, in the case of Eisner v. Macomber, 252 U. S. 189, 209, 40 S. Ct. 189, 194 (64 L. Ed. 521, 9 A. L. R. 1570), said: "For bookkeeping purposes, the company acknowledges a liability in form to the stockholders equivalent to the aggregate par value of their stock, evidenced by a 'capital stock account.' If profits have been made and not divided they create additional bookkeeping liabilities under the head of 'profit and loss,' 'undivided profits,' 'surplus account,' or the like. None of these, however, gives to the stockholders as a body, much less to any one of them, either a claim against the going concern for any particular sum of money, or a right to any particular portion of the assets or any share in them unless or until the directors conclude that dividends shall be made and a part of the company's assets segregated from the common fund for the purpose. The dividend normally is payable in money, under exceptional circumstances in some other divisible property; and when so paid, then only (excluding, of course, a possible advantageous sale of his stock or winding-up of the company) does the stockholder realize a profit or gain which becomes his separate property, and thus derive income from the capital that he or his predecessor has invested."

In the Davidson Case, supra, it was likewise held that the sum of $150,000 standing on the books of the corporation to the credit of its individual stockholders, which had not been declared as a dividend or paid out to the individual stockholders as such, or set aside out of the capital of the company for that purpose, was "invested capital" of the corporation, and not "borrowed money." In the present case, as in that case, the stockholders held no evidence of indebtedness against the corporation, other than the book entries, no interest was paid, and the surplus was retained in the treasury of the corporation to be used in conducting its business. Under these circumstances, as said in the Eaton Case, supra, "It could not have constituted 'borrowed capital.' The corporation could not borrow its own funds. And the shareholders could not loan what they at no time owned or had received. The surplus could not constitute 'borrowed capital,' borrowed from the stockholders, because the stockholders at no time had a right to it, either as against the corporation or the creditors of the corporation."

[3] It is insisted, however, in what is said to be the brief of the Bureau of Internal Revenue, incorporated into the brief of the Assistant Attorney General, that, inasmuch as the Commissioner and the Board of Tax Appeals have found as a fact that the accumulated surplus and salaries constituted "borrowed money," and was therefore taxable, that this finding of fact is conclusive upon this court, and must be accepted as such. The jurisdiction conferred upon Circuit Courts of Appeals, and likewise upon this court, in section 1003 (b) of the Revenue Act of 1926, 44 Stats. 110 (26 USCA § 1226), is as follows: "Upon such review, such courts shall have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require."

While it is true that this court will not act as a fact-finding body to pass upon the evidence as adduced in the lower tribunals, the court will consider the evidence to the same extent that a Circuit Court of Appeals will consider the evidence adduced in a cause tried in the District Court, namely, to the extent of determining whether or not the law, when applied to the facts, establishes a cause of action; and that is all that is required in this case. Did the agreement between these stockholders, as found by the Board, when applied to the law, convert the accumulated surplus and salaries into "borrowed money," or "invested capital"? In determining whether or not the tribunals below, in holding that this was "borrowed money" instead of "invested capital," were correct, we unquestionably have jurisdiction to examine the facts upon which that conclusion was based.

The Assistant Attorney General, referring to the discussions contained in the brief prepared by the Bureau of Internal Revenue, states that "we are not in accord with its reasoning nor with the conclusion reached by the Board of Tax Appeals, but feel bound to submit the case to this court for decision. A judgment based on a confession of error would not bind the Board of Tax Appeals in other like cases. For the reason that the Board of Tax Appeals has consistently sustained the position taken by the Bureau of Internal Revenue in similar cases, the Com-

missioner of Internal Revenue has not felt justified in changing his regulations." A decision is therefore requested in view of the conflict, at least so far as dividends are concerned, between the decision of the Board of Tax Appeals and the cases above cited.

[4] We are of opinion, on the facts as found by the Board of Tax Appeals, that there is no distinction between the accumulated salaries and the accumulated surplus which was credited to the stockholders in this case, and we think this position is supported by the decisions of the courts in the cases cited. The salaries left in the business, and credited to the stockholders on the books of the corporation, create a liability not different in character from the undistributed dividends so credited. They do not draw interest; they cannot be withdrawn until a fund has been set aside for that purpose; and, like all other undistributed assets of the corporation, they are subject to the rights of the creditors of the corporation. In neither instance do these accumulated amounts constitute "borrowed money," since the very purpose of leaving the salaries and dividends in the business was to obviate the necessity of borrowing money to be used in the operation of the business of the corporation.

We think, therefore, that the proof adduced before the Board is amply sufficient to support our conclusions in this case, and that there is no possible theory upon which this court would be justified in affirming the decision of the Board, for lack of proof upon which to base a reversal. The proof, as to the purpose for which the dividends and salaries were allowed to accumulate is so clear as to leave no doubt in our minds that the funds thus accumulated should be treated as "invested capital" and not as "borrowed money."

The decision of the Board of Tax Appeals is reversed, with costs, and the cause is remanded, with directions to enter a finding in accordance with this opinion.