SOUTHPORT MILL, Limited, v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fifth Circuit.
May 10, 1928.

No. 5250.

Internal revenue ⬤⟶7(3), 9(27)—Cash dividends retained pursuant to stockholders' agreement deferring payment held "borrowed capital," and properly excluded in determining income and excess profit taxes (Revenue Act 1918, § 326 [Comp. St. § 6336⁷⁄₁₆i]).

Cash dividends declared by corporation, part of which were retained pursuant to agreement

26 F.(2d)—2

with some of stockholders, deferring payment until there should be a sufficient fund accumulated in the treasury to operate business successfully, *held* "borrowed capital," and properly excluded from invested capital, under Revenue Act 1918, § 326 (Comp. St. § 6336⁷⁄₁₆i), in determining income and excess profit taxes.

Petition for Review of Decision of United States Board of Tax Appeals for the District of Louisiana.

Original petition by Southport Mill, Limited, against the Commissioner of Internal Revenue for review of a decision of the United States Board of Tax Appeals for the District of Louisiana, holding petitioner liable for deficiencies in income and excess profit taxes. Decision affirmed, without prejudice to apply for an allowance for interest on borrowed capital.

Nicholas Callan, of New Orleans, La., and E. Barrett Prettyman, of Washington, D. C. (Karl D. Loos, of Washington, D. C., and Preston B. Kavanagh, of Chicago, Ill., on the brief), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., and C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and M. N. Fisher, Sp. Atty. Bureau Internal Revenue, both of Washington, D. C. (Sewall Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a petition for review of a decision by the United States Board of Tax Appeals, which held petitioner liable for deficiencies in income and excess profit taxes for the fiscal years ending on May 31 in 1918 and 1919. That decision excluded from invested capital two amounts, one of $100,000 and the other of $197,500, and classified those amounts as borrowed capital. The Revenue Act of 1918, in force during the period involved, by section 326 (Comp. St. § 6336⁷⁄₁₆i) includes as invested capital paid-in surplus, but excludes borrowed capital. Petitioner insists that each of the amounts named was paid-in surplus, and should have been included in invested capital.

Petitioner is a Louisiana corporation, with a capital stock of $50,000, of which C. B. Coates and wife owned 25 per cent., A. D. Geoghegan and wife, Charles Monsted and wife, H. Guldmann, and A. G. Petersen owned 50 per cent.; the New Orleans Export Company owned the remaining 25 per cent., which was controlled by Monsted, Guldmann, and Petersen. In 1916, the corporation, although it was making money, was so heavily indebted that it could not incur any more unsecured

liabilities without violating Act 267 of the 1914 Legislature, which provides that a trading corporation shall not incur unsecured liabilities greater than twice the amount of its fully paid-up capital and surplus. Mr. and Mrs. Coates wanted a large cash dividend declared, but the other stockholders were opposed to doing that, because the corporation did not have the cash necessary to conduct its business.

To satisfy Coates and his wife, it was agreed that they should receive cash dividends at the end of each fiscal year on May 31, and the individual stockholders owning 50 per cent. of the stock agreed in writing with the corporation that annual dividends to all stockholders should be declared, but that the dividends payable to those signing the agreement should be deferred until such time as in the opinion of the corporation there should be accumulated in its treasury a fund sufficient to operate the business successfully, when they should receive their dividends in cash, together with 6 per cent. per annum on their share of the dividends, payment of which had been postponed. The amount so to be retained in the treasury is described as paid-in surplus. Mr. Geoghegan, who was president, on behalf of himself and associates who signed the agreement, and who together owned 50 per cent. of the stock, paid into the treasury of the company $100,000 in installments of $65,000 on June 1, 1917, and $35,000 on June 1, 1918. Geoghegan testified that there was no written agreement in regard to the $100,000, but that the purpose of paying it was to furnish the company with additional surplus to enable it to function until such time as it was able to liquidate that surplus. On May 1, 1916, a resolution declaring a dividend of $250,000 was adopted, and on May 9, 1917, another resolution declaring a dividend of $145,000 was adopted.

The dividends were paid in cash to Coates and wife, and presumably to the New Orleans Export Company. The parties to the agreement were credited with half the dividends, but the total of these amounts, $197,500, was credited to "paid-in surplus special as per agreement." In May, 1919, resolutions were adopted authorizing payment to the stockholders whose dividends had been deferred, in two amounts of $100,000 and $197,500, but

no interest or so-called extra dividend of 6 per cent. was paid on either amount.

It is clear that the $100,000 was borrowed money. It was not surplus, because it was not to be paid back to all stockholders alike, but only to those who furnished it. When the corporation paid it back, it discharged a debt which it owed to the stockholders who advanced the money. To designate this fund as surplus did not make it so, or change its character. The intention of the parties not to treat this fund as a corporate asset is indicated by the fact that it was returned to those from whom it was obtained. The amount of $197,500 is the exact total of 50 per cent. of dividends deferred during the fiscal years 1918 and 1919. The stockholders who agreed that their dividends be deferred were in the meantime the creditors of the corporation. The effect of the agreement was to make a loan to the corporation of funds of some of the stockholders.

The provision for the payment of 6 per cent. on the deferred dividends was for the purpose of paying interest on the loan, so as to adjust satisfactorily between the stockholders the payment of cash dividends to Coates and his wife. It is argued as to each of the amounts involved that there was no definite time stated for liquidation, but in each instance the time was ascertainable, and payment was required to be made when the company's financial condition was satisfactory. Even if the time were indefinite, the only effect would be that the loan would be uncollectible. The effect would not thereby be produced of changing an unenforceable loan into a paid-in surplus.

Petitioner contends that the accrued interest provided in the agreement would equal the amount of the deficiency for which it was held liable, and therefore that the decision under review was erroneous. Whether the amounts should be treated as invested or borrowed capital was the question at issue. Petitioner did not proceed before the Board of Tax Appeals upon the theory that it was entitled to deduct interest from income.

The decision under review is affirmed, without prejudice to petitioner to make application to the Board of Tax Appeals for an allowance for interest on borrowed capital.

Affirmed.