BULGER BLOCK COAL CO. v. UNITED STATES.

No. K–87.

Court of Claims.

April 6, 1931.

Claude W. Dudley, of Washington, D. C., for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

The controversy in this case is with reference to a dividend declared by the plaintiff and entered upon its books to the credit of one D. J. Kennedy, under the heading "Dividends payable, D. J. Kennedy," but not actually paid during the taxable years in question. The plaintiff claims that, as the money was used in the business, it was a part of the surplus or undivided profits of the company. The defendant, on the other hand, insists that it represented borrowed money which should be deducted from plaintiff's invested capital during the years in question. The Commissioner of Internal Revenue took the latter view of the case, and deducted the amount of dividend due Kennedy in computing the invested capital of plaintiff. This, plaintiff's counsel says, was an error, and, having paid the additional taxes assessed by reason of this action on the part of the Commissioner and duly filed claims for refund, plaintiff brings this suit to recover the amount by which its taxes were thereby increased.

There is no dispute as to the facts in the case. The taxable years of 1918, 1919, and 1920 are involved. During those years, one D. J. Kennedy owned 99 per cent. of the stock of the plaintiff corporation and also 98 per cent. of the stock of the D. J. Kennedy Company, another corporation. The plaintiff and the D. J. Kennedy Company accordingly filed consolidated income and profits tax returns; it being conceded that the two corporations were affiliated.

It appears that the plaintiff was engaged in mining and shipping coal at wholesale. The D. J. Kennedy Company was engaged in the sale of coal and builders' supplies at retail. The business of plaintiff was a profitable one, while that of the D. J. Kennedy Company was not. The plaintiff supplied the D. J. Kennedy Company with coal and extended credit therefor by reason of which a large indebtedness was created from the D. J. Kennedy Company in favor of plaintiff during the years involved. In order to provide D. J. Kennedy with funds which he might advance to the D. J. Kennedy Company with which to liquidate its indebtedness to plaintiff, it was planned to have a 100 per cent. dividend declared by the plaintiff, which was accordingly done on November 8, 1917. After the dividend had been declared, D. J. Kennedy was informed that, if the plan was carried out, it would necessitate his paying an income tax of approximately $40,000. This led to the abandonment of the plan to furnish funds to the D. J. Kennedy Company. D. J. Kennedy's share of the dividend was credited to an account on the books of the plaintiff entitled "Dividends payable, D. J. Kennedy." The minority stockholders were paid their share of the dividend, but the balance of $104,950 remained in said account on the plaintiff's books until May 31, 1918, and under that date the amount of $24,339.76 was entered as a charge thereon and credited to D. J. Kennedy's personal account. The balance of D. J. Kennedy's share of the declared dividend ($80,610.24) continued to be carried on plaintiff's books in this account through the years involved in the case, and is the amount which the Commissioner treated as borrowed money. It is this action of the Commissioner of which the plaintiff complains.

Under section 326 (a) of the Revenue Act of 1918 (40 Stat. 1092), which controls the case, "invested capital" does not include "borrowed capital," and section 325 (a) provides:

"That as used in this title— * * *

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, *open accounts,* or otherwise. * * *" (Italics ours.)

The ultimate question in the case is whether this $80,610.24, carried in an account as above stated, was borrowed capital.

The brief filed on behalf of plaintiff practically concedes that, by the declaration of the dividend, an indebtedness was created in favor of the stockholders and against the corporation for the amount of their respective shares. Nevertheless, it is argued that, by reason of the fact that the greater portion of the dividend involved was not paid to D. J. Kennedy, but remained with the corporation and was used in its business, this sum, amounting to $80,610.24, remained part of the capital of the company as surplus or un-

divided profits. In determining this question, the language used in some of the decisions of the courts which have held that the declaration of a dividend created an indebtedness in favor of the stockholders will be found enlightening.

The leading authorities on the relation of a stockholder to a corporation after a dividend has been declared are reviewed in the case of W. E. Caldwell Co., Inc., 6 B. T. A. 47, 51–52, in which it is said: "The reasoning advanced in the Stange Case [1 B. T. A. 810] was to the effect that upon the declaration of a dividend the corporation immediately becomes the debtor of the stockholder for his proportionate part of the dividend, regardless of the fact that actual payment is not to be made until later. There is abundant authority for this proposition and we have seen no authority to the contrary."

Reference is further made to the case of Wheeler v. Northwestern Sleigh Co. (C. C.) 39 F. 347, 348, wherein the court declared: "By the declaration of a dividend, however, the earnings, to the extent declared, *are separated from the general mass of property, and appropriated to the then stockholders*, who become creditors of the corporation for the amount of the dividend. The relationship of the stockholder to the corporation, as to the amount of the dividend, is thus changed from one of partnership ownership to that of creditor. He thereafter stands * * * with respect to the dividend, as creditor upon a par with other creditors of the corporation. * * * That the dividend is payable at a future date can work no distinction in the right. The debt exists from the time of the declaration of dividend, although payment is postponed for the convenience of the company." (Italics ours.)

That the same rule has been laid down by all of the leading text-writers on corporations is shown in Staats v. Biograph Co. (C. C. A.) 236 F. 454, 458, L. R. A. 1917B, 728, in which, after quoting from Taylor on Corporations (5th Ed.) § 568; Machen on Modern Law of Corporations, vol. 2, § 1358; Morawetz on Corporations, vol. 1, § 445, the opinion recites:

"But if a board of directors should declare a cash dividend and make a public announcement of the fact, the courts have held that thereafter the board has no right to reconsider and rescind its action. The reason seems to be that the declaration of the dividend sets apart from the profits of the corporation a sum which is to be paid to the stockholders in proportion to their shares, and that

it creates a debt due from the corporation to each shareholder, resulting in the relation of debtor and creditor. *A dividend divides the property which belongs to the corporation into that which the corporation retains and that which the corporation agrees to pay to the stockholders,* and which it is thereby bound to pay. That which one person is bound to pay to another is a debt. Lockhart v. Van Alstyne, 31 Mich. 76, 78, 18 Am. Rep. 156 (1875)." (Italics ours.)

In 14 C. J. § 1238, p. 815, the rule is laid down that: "The declaration of a dividend creates a debt against the corporation in favor of each stockholder to the amount due him as his pro rata share"—citing more than 50 cases from 14 different states.

Also: "And this is true although the dividend is made payable at a future date * * *. When a dividend has been declared and no fund has been set apart for the payment thereof, a stockholder stands in the same position as other general creditors of the corporation"—citing a number of cases.

In McLaran, Administrator, v. Crescent Planing Mill Co., 117 Mo. App. 40, 49, 93 S. W. 819, 822, after reviewing the authorities on this point and quoting at length from leading text-writers on the subject, the court reached the conclusion that: "The doctrine is that *by the mere declaration,* the dividend becomes immediately thereby separated and segregated from the stock and exists independently of it; that the right thereto becomes at once immediately fixed and absolute in the stockholder, and from thenceforth the right of each individual stockholder is changed by the act of declaration from that of partner and part owner of the corporate property to a status absolutely adverse to every other stockholder *and to the corporation itself,* in so far as his pro rata proportion to the dividend is concerned." (Italics ours.)

These cases show that authority is abundant for the proposition that the declaration of a dividend is sufficient by itself and alone to set apart from the profits of the corporation (if the profits are sufficient for that purpose) a sum which is to be paid to stockholders in proportion to their shares. But counsel for plaintiff contend that this is merely in a bookkeeping sense, and that, until the dividend has actually been paid over to the stockholders, it still remains a part of the surplus and undivided profits of the corporation. We will discuss this proposition later after considering the decisions cited on behalf of plaintiff, which we will next take up. The cases relied upon by counsel for plaintiff

are all distinguishable to some extent in respect to the facts upon which the decisions made therein were based, but it must be conceded that all of them contain some statements which, taken by themselves and alone, might tend to support the theory upon which counsel for plaintiff seeks to maintain the case.

The case of Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, 59, is largely relied upon by plaintiff, but in that case the court held upon the facts that the directors could not legally declare a dividend, and, in effect, that, their action having been illegal in this respect, no indebtedness to the stockholders arose by reason of the declaration of the dividend. In other words, the situation was the same as if no dividend had been declared. Counsel for plaintiff quotes from the opinion with reference to the fund in controversy in this case the following: "The surplus having never been distributed but during the entire period was retained in its own treasury, it could not have constituted 'borrowed capital.' "

But this language must be considered as applying to the particular facts in that case where no dividend had been properly declared. True, the court held therein that no indebtedness had been created, but obviously, as we think, it would not have so held if it had found that there was a legal declaration of the dividend, and this finding that there was no indebtedness created inevitably led to the conclusion that the fund in question could not be "borrowed capital," as there was no claim of any contractual borrowing.

In the case of Davidson & Case Lumber Co. v. Motter (D. C.) 14 F.(2d) 137, it appeared that the amount in question, although credited to the stockholders on the books, not only had not been paid to the stockholders, but had not been declared as a dividend. A reading of the decision in full will show that it was based on the fact that no dividend had been declared, and to that extent we have no disagreement with it. We have no occasion here to determine the effect of merely crediting an amount to the account of a stockholder. The opinion quotes with approval the language used in the case of Eaton v. English & Mersick Co., supra, and also a statement made by the Supreme Court in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 194, 64 L. Ed. 521, 9 A. L. R. 1570, to which reference will hereinafter be made. But the decision does not thereby become an authority in a case where a cash dividend has actually been declared as in the case at bar.

In Flynn v. Haas Bros. (C. C. A.) 20 F.(2d) 510, another case cited on behalf of plaintiff, the court found that the directors did not intend to declare a dividend. While the court quoted, with approval, from the case of Eaton v. English & Mersick Co., supra, to show that the resolutions of the directors created no separate fund distinct from the capital stock or surplus profits, and that the company did not set aside any fund which had become the property of the stockholders, the case was evidently treated as if the action of the directors did not constitute a valid declaration of a dividend. We therefore do not think it sustains the plaintiff's position.

Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540, 541, cited by plaintiff (a case in which an appeal had been taken from the decision of the Board of Tax Appeals), appears in some respects to support plaintiff's contention. Counsel for defendant say in argument that no dividend was declared in that case. It is true that the opinion does not refer anywhere to a *declaration* of a dividend, but there are numerous references all through the opinion to "dividends," "accumulated dividends," and "undistributed dividends" in the case, and we are at a loss to understand how such matters could exist if there never had been anything in the way of a declaration of a dividend. In the opinion the court said: "It is elementary law that before title to a dividend passes to the stockholder there must be a declaration of a dividend; and the fund for its payment must be separated from the capital or surplus profits of the corporation. When this is done, it becomes the property of the stockholder, and a debt of the corporation on which the stockholder may recover, and it is likewise exempt from action by creditors of the corporation."

The implication from this statement would seem to be that, unless there was an actual separation so that a separate fund was created, there was no segregation of the dividend. Although the opinion does not show definitely whether there had been any declaration of a dividend, it recites that certain amounts "representing the accumulated dividends and undrawn salaries * * * had been credited to the three individual stockholders on the books of the corporation." But the court also found that the "surplus dividends *under the agreement of the stockholders in this case remained the property of the corporation to be used in its business, and as such a part of its invested capital."* (Italics ours.) If the stockholders made an agreement that the dividends should remain

the property of the corporation and a part of its invested capital, such an agreement would present a very different state of facts than is shown in the instant case.

The most significant feature of the decision in the Feick & Sons Case, supra, is found in other parts of the opinion where it is stated: "It is conceded by the Assistant Attorney General that the amount of accumulated dividends should not be excluded from appellant's invested capital."

And also: "The Assistant Attorney General, referring to the discussions contained in the brief prepared by the Bureau of Internal Revenue, states that 'we are not in accord with its reasoning nor with the conclusion reached by the Board of Tax Appeals.'"

Such a statement not only indicated the position taken by the Department of Justice, but amounted to a confession of error, under which the case would be reversed as a matter of course without anything further. But in this particular case it seems that an opinion was asked and therefore rendered.

If the Department of Justice still takes this position with reference to accumulated dividends which had not been paid out, there is reason to expect a similar result would follow in this case if judgment was rendered in favor of the defendant. We shall undertake to show, however, that the reasoning and logic used in every decision directly involving the question upon which the case at bar turns do not accord with this concession.

Before leaving the cases cited by plaintiff, mention should be made of two others upon which plaintiff relies. One is the case of Eisner v. Macomber, supra, from which an extensive quotation is made in the Feick Case, supra, including the following: "The dividend normally is payable in money, under exceptional circumstances in some other divisible property; and when so paid, then only (excluding, of course, a possible advantageous sale of his stock or winding-up of the company) does the stockholder realize a profit or gain which becomes his separate property, and thus derive income from the capital that he or his predecessor has invested."

But the Supreme Court in this case was considering the question of whether a stock dividend was subject to tax as income. What was said in its opinion had reference to stock dividends only, and what is quoted above to the question of whether a party in receipt of a stock dividend had realized any profit or gain which was taxable. We think, therefore, this language has no application to the

instant case. Moreover, when a stock dividend is declared, the same rule does not apply as where a cash dividend is declared, and the stockholder cannot sue and recover his proportionate share in cash. Terry v. Eagle Lock Co., 47 Conn. 141; State v. Baltimore, etc., R. Co., 6 Gill (Md.) 363, 386.

The opinion in the case of United States v. Mellon (D. C.) 279 F. 910 (also cited by plaintiff), shows that the court held the dividend therein involved was in effect a stock dividend, and the court followed the rule laid down in Eisner v. Macomber, supra, wherein it was said with reference to stock dividends that: "The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, * * * whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders * * * still remains the property of the company."

In the case at bar the evidence does not show the form of the declaration of the dividend, but we think that the circumstances clearly show that it was a cash dividend, and have so found. The Commissioner also so found in his finding XVI, and the plaintiff has taken no exception thereto. It will be observed that the dividends due the minority stockholders were paid in cash shortly after the declaration thereof.

Coming now to the ultimate question in the case, which is, whether the dividend declared remained a part of the assets of the company and could be included in its surplus, we think it has been shown that there is in fact little, if any, conflict in the authorities, and that the rule is, as stated in Jermain v. Railroad Co., 91 N. Y. 483, that: "When a dividend has once been declared out of net earnings, *the amount of such dividend is no longer a part of the assets of the company*, but is appropriated or set apart for the shareholders." (Italics ours.)

Indeed, when it is once conceded that the declaration of a dividend creates an indebtedness in favor of the stockholders, it is difficult to see upon what line of reasoning a different conclusion could be reached. We know of no rule of bookkeeping or principle of law by which an indebtedness of a corporation could be made part of its surplus or undivided profits.

The Supreme Court said in Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 88, 70 L. Ed. 235, that: "The surplus account represents the net assets of a corporation *in ex-*

*cess of all liabilities* including its capital stock." (Italics ours.)

That the unpaid portion of this dividend was both a debt and a liability there is no doubt, and it is equally certain that suit could be brought thereon at any time by the stockholders.

The plaintiff argues that the fact that no interest was paid on the account in which the dividend was carried shows it was not borrowed money. But this contention loses its force (if it has any) when it is considered that D. J. Kennedy owned 99 per cent. of the stock in the plaintiff corporation, and that paying interest on the account would have been merely taking it out of one pocket and putting it into another.

We think, we have already shown quite conclusively, that the declaration of a dividend is by itself and alone sufficient to set apart the amount thereof to the stockholders; but, if it should be held that some other segregation should be made thereof in order to take the fund out of the surplus account, we think it was done in this case when the amount of the dividend in controversy was, after the declaration of the dividend, carried on plaintiff's books in an account headed "Dividends payable—D. J. Kennedy." The plaintiff calls attention to the fact that a portion of the dividend due D. J. Kennedy was credited directly to his personal account. The evidence fails to show why this was done, and we do not think it alters the relation of the parties.

There is another matter which should be considered in this connection. When the amount of the dividend of D. J. Kennedy was carried in a separate account headed "Dividends payable—D. J. Kennedy," and placed upon the credit side thereof, it necessitated a countercharge somewhere upon the books of the company, otherwise the books would not balance. There is no place where this countercharge could have been made except in the surplus or undivided profits account, and, while the evidence does not directly so show (the books of the corporation not being in evidence), we can come to no other conclusion but that the plaintiff's books showed in the surplus account a charge of the amount of this dividend. The evidence shows that in making up statements of the condition of the corporation for the banks the amount of this dividend was included in the surplus. We have no occasion to determine in what position such a statement put the party who made it. It is sufficient to say that like any other liability the amount of the dividend could not properly be included in surplus, and that, if the books were properly kept, it would not be so included.

The statute under which the case must be determined makes borrowed money include open accounts with the intent, as we think, of covering just such cases as we now have before us. We have already shown that the amount of the dividend could not constitute surplus, and it certainly could not constitute undivided profits, for the express purpose of the dividend was to divide profits. This leaves no other classification for the purpose of the statute except that of "borrowed money." It is true it was used in the business, but money borrowed by a corporation always is, or at least should be.

In the case of W. E. Caldwell Co., Inc., supra, in determining the effect of the declaration of a dividend, after quoting from Park v. Gilligan (D. C.) 293 F. 129, the following statement: "It is well settled that the declaration of a dividend creates a debt from the corporation to the stockholders," the Board went on to say: "If such a relationship is created upon the declaration of a dividend, from that moment the corporation has no right to have the amount of the dividend included in its statutory invested capital, as defined by section 326 of the Revenue Act of 1918. If it uses the money or property with which it must pay the dividend, to the amount of the dividend declared it is using borrowed money and such is excluded from statutory invested capital."

With this statement of the law we are in entire accord.

The Commissioner rightfully excluded the amount of the unpaid dividend from plaintiff's capital and surplus, and its petition must be dismissed. It is so ordered.