## WEAVER v. COMMISSIONER OF INTERNAL REVENUE.

No. 6653.

Circuit Court of Appeals, Ninth Circuit.

May 16, 1932.

Philip G. Sheehy, of San Jose, Cal., and A. E. Cooley, of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. U. S. Atty. Gen., and Sewall Key and S. Dee Hanson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and John R. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks to review a decision of the Board of Tax Appeals affirming the determination of an income tax upon property received by petitioner as a stockholder of the Chester N. Weaver Company. The facts are stipulated and the principal issue in the case is whether or not the money so paid was the repayment of a loan or was a dividend. The stipulated facts are, in part, as follows:

"The above named corporation [Chester N. Weaver Company] was organized in the year 1914, with a subscribed capital stock in the sum of $200,000.

"The stockholders of the corporation in 1919, in order to increase the working capital of said corporation, paid into the corporation the sum of $100,000; said sum was paid by the various stockholders in proportion to each of their holdings, and increasing the capital of the corporation to the sum of $300,000. The stockholders did not receive any shares of stock for said $100,000 so paid. A verbal understanding existed among the stockholders that at some future date the above contributed sum would be returned to them.

"At all times until distributed the said amount, to wit, $100,000, was carried in a separate account by itself and called 'contributed surplus,' and no other funds were transferred to or carried in that account at any time while said account remained on the books of the corporation. The greater part of said 'contributed surplus' was paid in by the stockholders from various sums credited to the stockholders' individual accounts on the corporate books from former years' earnings and profits of the corporation. At all times the sum so contributed was used in the business of the corporation.

"The said amount of $100,000, known and called on the books of the corporation 'contributed surplus,' was in January, 1922, by special and separate resolution returned to the contributing stockholders, in the exact sums originally contributed and the account was closed on the books of the corporation.

"The Commissioner in his 60-day letters asserted that such transaction constituted a dividend, thereon assessed a deficiency tax by adding to the net income of each of the above taxpayers, based on the respective amount each received from said 'contributed surplus' account, as follows:

| | |
|---|---|
| Chester N. Weaver, | $46,000 |
| Louise Mysell, | 4,000 |
| Hart L. Weaver, | 15,000 |
| A. R. Dennis, | 10,000 |
| William J. Richardson, | 15,000 |
| James Gurley, | 5,000 |
| Helen Dennis, | 5,000 |
| | $100,000 |

"The 'capital' and 'surplus' accounts appeared on the books of the said corporation before and after the distribution of said 'contributed surplus,' as follows:

| Account | 12/31/21 | 1/31/22 |
|---|---|---|
| Earned surplus | $225,000.00 | $225,000.00 |
| Capital | 200,000.00 | 200,000.00 |
| Contributed surplus | 100,000.00 | .00 |
| Loss and gain | .00 | 11,053.00 |
| Undivided profits | 96,430.11 | 96,430.11" |

The agreement of the stockholders with one another was in legal effect an agreement to loan $100,000 to the corporation for working capital, each stockholder contributing his pro rata share. By accepting the benefit of this agreement the corporation was bound by the corresponding burden to return the money to the contributors. When it did so it repaid the loan in accordance with that agreement. We see no basis here for taxation of this money on the theory that it is income. It is true it was carried on the books as contributed surplus as between the stockholders who made the contribution and transferees of their stock. The stockholders who advanced the money might be estopped from claiming a return of the money but as between the government and the stockholders the actual transactions controlled in determining whether or not the money thus advanced and repaid is income within the meaning of the revenue act. In his contention that the transaction between the stockholders and the corporation did not constitute a loan the re-

spondent relies largely upon the stipulated fact that "the greater part of said 'contributed surplus' was paid in by the stockholders from various sums credited to the stockholders' individual accounts on the corporate books from former years' earnings and profits of the corporation." Counsel argues that the only way in which income of the corporation could properly be shown on the books to the credit of individual stockholders' accounts would be by reason of the declaration of a dividend, quoting in support of this contention from the opinion of the Court of Appeals of the District of Columbia in Geo. Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540, 541, as follows: "It is elementary law that before title to a dividend passes to the stockholder there must be a declaration of a dividend; and the fund for its payment must be separated from the capital or surplus profits of the corporation. When this is done, it becomes the property of the stockholder, and. a debt of the corporation on which the stockholder may recover, and it is likewise exempt from action by creditors of the corporation."

To the same effect, Southport Mill v. Commissioner (C. C. A. 5) 26 F.(2d) 17, where it was held that where declared dividends were left in the business in pursuance of an agreement to that effect such agreement constituted a loan to the corporation. We agree with the propositions advanced by the respondent and the authorities cited by him in support of his contention. The real difficulty in the case lies in the interpretation of the stipulation. The agreement above quoted that the greater part of the contributed surplus was paid in by the stockholders from various sums credited to them on the corporate books is in effect an agreement that a dividend had been declared and that the money had been allowed by the stockholders to remain to their credit on the books without collection. If these credits were improperly made on the books and did not actually represent moneys due from the corporation to the stockholders, respondent should have incorporated such facts in the stipulation. He must be bound by the reasonable interpretation of the facts upon which he has agreed to submit the case. If he contended that the credits on the books did not in fact belong to the stockholder and did not constitute a debt from the company to the stockholder, and were not under the control of the stockholder, he should not have stipulated that the stockholder paid in this money to the corporation. They could not pay in that which they did not control. So far as the respondent's contention that the distribution of the $100,000 to the stockholders constituted a deferred dividend of sums long previously erroneously credited on the books of the corporation is concerned, the stipulation destroys the foundation for such a contention. The entry upon the books of the corporation of a credit in favor of a stockholder would be prima facie evidence of a debt from the corporation to the stockholder and in the absence of countervailing evidence would be sufficient to establish the existence of the indebtedness. A stipulation that such entries were made upon the books of the corporation without any agreement as to any countervailing evidence would have the same effect.

Order reversed.